SYLLABUS

(This syllabus is not part of the opinion of the Court. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Supreme Court. Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**State of New Jersey v. Michael W. Lamb (A-37-12) (071262)**

**Argued October 22, 2013 -- Decided May 19, 2014**

**CUFF, P.J.A.D. (temporarily assigned), writing for a unanimous Court.**

In this appeal, the Court considers the validity of a warrantless search of a house, specifically addressing whether the knowing and voluntary consent by an occupant to search a premises is constitutionally effective against a third party when an absent co-occupant has objected to the search.

On July 3, 2009, Pennsville police received a report of a shooting on a city street. The victims told police that defendant Michael W. Lamb pulled up next to them in a car driven by his girlfriend, Jennifer Garcia. Garcia stopped the car and defendant questioned the victims about the location of another man. After going back and forth about whether the victims knew the man, defendant produced a handgun. One victim reached through the car window, grabbed defendant's arm and pushed the gun toward the floor. Garcia started to drive away, and defendant fired at the victims as they ran into a nearby yard.

Outside of a home in the community where defendant allegedly lived, Pennsville Township Police Detective Greg Acton located two cars matching the description provided by the victims. Acton and another officer knocked on the door multiple times while defendant's stepfather, Steven Marcus, yelled that they should leave. Although Marcus ultimately opened the door, he insisted defendant was not there and again demanded that the officers leave the premises. Acton removed Garcia from the house when she approached the front door. She told Acton that defendant was hiding under the bed in the room they shared and confirmed that she had been driving the car, that she saw the gun, and that defendant fired a shot into the air. According to Garcia, in addition to defendant and Marcus, three young children and defendant's mother, Karen Marcus, were in the house.

Police called the residence in an effort to persuade either defendant or Marcus to come outside. Once Marcus left the home, he was placed in custody and removed from the area. At the insistence of his mother, defendant also left and was arrested. Acton then spoke to Karen, who later admitted that she signed a consent-to-search form after being told the police would obtain a search warrant if she refused. She explained that one of her young children was distraught, she did not want her new home torn apart in a search, and she was upset about her son's behavior. Karen took the officers to defendant's room, where they found a handgun.

Defendant was indicted on two counts of attempted murder, four counts of aggravated assault, one count of unlawful possession of a handgun, and one count of possession of a handgun for an unlawful purpose. He moved to suppress the evidence seized from his bedroom, arguing that Karen's will was overborne by police. The trial court denied the motion, finding that Karen acted voluntarily and without coercion. The court noted that although Karen undoubtedly was upset and fearful, these emotions did not overwhelm her ability to consent to a search. Moreover, the court concluded that the police had no obligation to leave the premises as directed by Marcus, explaining that his earlier refusal to permit entry did not nullify Karen's subsequent consent. Defendant entered a conditional guilty plea to second-degree unlawful possession of a handgun and was sentenced to a five-year prison term subject to three years of parole ineligibility.

Defendant appealed the denial of his motion to suppress. The Appellate Division affirmed, finding that Karen knowingly consented to the search. It agreed that her consent was not nullified by Marcus's earlier refusal, emphasizing that Marcus was not present when Karen consented, his refusal was not contemporaneous, and there was no evidence he was removed from the home to avoid his objection. The Court granted defendant's petition for certification limited to the issue of whether consent by an occupant to search a premises is constitutionally effective against a third party when an absent co-occupant has objected to the search. 213 N.J. 531 (2013).

1

**HELD:** Under the circumstances of this appeal, an occupant's knowing and voluntary consent to search a premises is constitutionally effective against a third party and is not nullified by the prior objections of an absent co-occupant whose absence is not the result of a police effort to avoid an objection.

1. Appellate courts reviewing the grant or denial of a motion to suppress are required to uphold the trial court's factual findings when supported by sufficient credible evidence, reversing only when demanded by the interests of justice. Deference is not given to a trial court's interpretation of the law, which is reviewed de novo. (p. 14)

2. Under the automatic standing rule, virtually all defendants are permitted to contest a search or seizure where they have either a possessory, participatory or proprietary interest in the place searched or property seized, or if possession of the seized evidence is an essential element of guilt. Here, defendant has automatic standing to contest the search and seizure since he clearly had a possessory interest in the seized handgun, possession of which is an essential element in several of the charged offenses. (pp. 14-16)

3. The preference for police officers to obtain a warrant prior to searching an individual's home arises from the Fourth Amendment of the United States Constitution and Article I of the New Jersey Constitution, which guarantee the right to be free of unreasonable searches and seizures in one's home. Where consent to search is freely and voluntarily given, it is a recognized exception to the warrant requirement. If multiple people reside in the same home, any occupant with common authority over the premises or effects sought to be inspected may voluntarily consent to a lawful search. However, a co-occupant's consent is insufficient basis for a reasonable search if a potential defendant with self-interest in objecting is physically present and objects. Georgia v. Randolph, 547 U.S. 103, 121 (2006). In contrast, a potentially objecting occupant who is nearby but not part of the conversation need not be considered so long as he or she has not been removed by police for the purpose of avoiding a possible objection. Id. at 121-22. Recently, in Fernandez v. California, 571 U.S. ___, ___ (2014), the Supreme Court underscored the limited scope of Randolph, holding "that an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason." Since it would be inconsistent with the narrow exception in Randolph, the Supreme Court also declined to place a durational limit on an objection's effectiveness. Id. at ___. In New Jersey, no prior cases have considered the constitutionality of a search as to a third occupant against whom the government wished to use the seized evidence when the search was conducted with consent of one co-occupant subject to the contemporaneous objection of another. (pp. 16-23)

4. Here, the focus of the challenge is whether Karen's consent was overridden by Marcus's prior strenuously expressed demands that the police leave the premises. The Court concludes that the rule announced in Randolph does not render Karen's consent invalid and the search unreasonable. The Randolph holding is very narrow and emphasizes that a search predicated on the consent of one occupant over the objection of another renders the warrantless search constitutionally infirm only as to the objecting occupant. Thus, the search here is not unreasonable as to defendant even in the face of Marcus's demands. Moreover, there was no suggestion that Marcus renewed his objection after leaving the house, and the record likewise provides no support for a conclusion that the police engineered the departures of Marcus or defendant in order to prevent them from objecting to the warrantless search of defendant's room. In fact, the police had probable cause to arrest defendant for the earlier shooting and to detain Marcus once he left the house. Any doubt that the police did not comport with the limited holding in Randolph is resolved by Fernandez, supra, which places an occupant who is absent due to a lawful detention or arrest in the same position as any other absent occupant. 571 U.S. at ___. Since Marcus's lawful removal nullified his earlier objection, Karen had full authority to consent to the search. The Court also recognizes that the circumstances here were infused with exigency since the home was in close proximity to other residences and Karen was inside with three small children and a loaded gun. The record attests to a reasonable police response, with no suggestion that any occupant's absence was contrived to avoid a potential objection to the search. Karen provided knowing and voluntary consent, rendering the warrantless search reasonable under the circumstances of this appeal. (pp. 23-27)

The judgment of the Appellate Division is **AFFIRMED**.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN and PATTERSON; and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.**

2

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

       v.

MICHAEL W. LAMB,

    Defendant-Appellant.

> Argued October 22, 2013 – Decided May 19, 2014
>
> On certification to the Superior Court, Appellate Division.
>
> Jay L. Wilensky, Assistant Deputy Public Defender, argued the cause for appellant (Joseph E. Krakora, Public Defender, attorney).
>
> Frank J. Ducoat, Deputy Attorney General, argued the cause for respondent (John J. Hoffman, Acting Attorney General of New Jersey, attorney).

JUDGE CUFF (temporarily assigned) delivered the opinion of the Court.

This appeal involves the validity of a warrantless consent search of a house. An investigation of a reported shooting in another part of town led Pennsville police to the house in which police knew defendant Michael W. Lamb had resided at one time. When police arrived, defendant's stepfather emphatically

informed police that they were not welcome on his property or in his house.

While defendant's stepfather informed police that they could not enter his home, defendant's girlfriend appeared at the door and left the house. She supplied information to police that provided probable cause for defendant's arrest and confirmed his presence in the house.

Later, defendant's stepfather agreed to leave the house. Soon thereafter, defendant left the house at the insistence of his mother. She remained in the house with three children between the ages of eight months and nine years and a loaded gun.

Defendant's mother permitted police officers to enter the house and agreed to a search of the room where her son and his girlfriend were staying. Police located a loaded handgun and ammunition similar to the equipment used in the earlier shooting.

We conclude that the consent to search provided by defendant's mother was knowing, voluntary, and valid. The absence of defendant and his stepfather from the home permitted defendant's mother to provide or withhold consent. Fernandez v. California, 571 U.S. ___, 134 S. Ct. 1126, 188 L. Ed. 2d 25 (2014). Furthermore, the initial opposition expressed by

defendant's stepfather was no longer effective once he was not physically present in his home.

Under the totality of the circumstances, we hold that the warrantless search of defendant's bedroom was solidly anchored to the knowing and voluntary consent to search given by defendant's mother.

I.

We derive the facts from the evidentiary hearing conducted by the motion court in response to defendant's motion to suppress the handgun seized following a consent search of his mother and stepfather's home authorized by his mother.

On July 3, 2009, Pennsville police received a report of a discharge of a firearm on a city street in the Deepwater section of town. The victims, a man and a woman, told police that they encountered defendant, first on foot and then as a passenger in a car. Defendant initially approached the victims and inquired about the location of a particular individual. The male victim advised defendant that he did not know the man. Defendant left but returned moments later in a car driven by his girlfriend, Jennifer Garcia. She stopped the car alongside the male victim, and defendant, who was seated in the front passenger seat, resumed his questioning about the whereabouts of the man he was trying to locate. During this conversation, defendant

identified himself as Michael Lamb and told the victims he was from Quinton, a town about ten miles from Pennsville.

The male victim reiterated his earlier statement that he did not know the man whom defendant sought, but the female victim started to volunteer some information. The male victim silenced her, and defendant and the male victim continued to discuss whether the male victim had any knowledge of the other person. Then, defendant produced a handgun. The male victim reached through the open window, grabbed defendant's arm, and pushed the gun toward the floor of the car. Garcia started to drive from the scene and the male victim removed his hand from defendant's arm. As the car pulled away, the male victim saw defendant lean out of the front passenger seat window and point the gun in his direction. As the male and female victims ran into a yard, the male victim saw a flash from the muzzle of the gun and heard a discharge. Police later found a .45 caliber spent shell casing close to the curb where defendant had discharged the gun.

A police database search revealed that defendant had lived with his parents at Lot 18 of the South Bridge Community Mobile Home Park in Pennsville. In an attempt to locate defendant, Pennsville Township Police Detective Greg Acton drove through the community in an unmarked car and observed two cars at Lot 18 that matched the descriptions provided by the victims. After

4

securing the area, Detective Acton drove to the residence and observed a middle-aged white male standing on a step. As the detective exited his car, the male, later identified as Steven Marcus, defendant's stepfather, immediately entered the house.

Acton and another officer approached the door and knocked. When Acton received no response, he knocked harder. Through the unopened door, the detective heard a male voice yell that the police should leave the property. The detective banged on the door again, and Marcus opened the door. The detective told Marcus that he was looking for defendant. Marcus stated that defendant was not there and emphatically demanded that the police leave the premises.

The detective observed, standing behind Marcus, a young woman, who matched the description of the driver of the car carrying defendant and who was later identified as Garcia. The officer asked whether the young woman was defendant's girlfriend and if defendant was in the house. As Garcia approached the door, the detective took her arm and removed her from the house. All the while, Marcus was yelling for the police to get out of the house and leave his property.

Garcia told the officer that defendant was in the house and hiding under a bed in the room they occupied when they visited defendant's mother and stepfather. She also confirmed that she had driven defendant to the Deepwater section of Pennsville,

5

that a conversation occurred between defendant and another male that escalated into a verbal argument, and that she saw the gun and observed defendant fire a shot into the air. Garcia told the detective that she did not know whether defendant remained in possession of the gun. Detective Acton also learned that, in addition to defendant, two adults and three children between the ages of eight months and nine years were in the house.

Detective Acton ordered other officers to evacuate nearby residences and requested assistance from the police department and the county prosecutor. Once the area was secure, police placed a telephone call to the residence to persuade either defendant or Marcus to leave the residence. After approximately ten to fifteen minutes, Marcus left the residence. He was placed in custody and removed to a safe area. Police continued to speak with Karen Marcus, the mother of defendant and wife of Marcus. Approximately ten minutes later, at the insistence of his mother, defendant left the house and was arrested. Officers from the county prosecutor's office and Detective Acton went to the entrance of the house to speak with Karen.[1]

Karen later admitted that she signed a consent-to-search form but insisted that she did not do so voluntarily. She testified that the police informed her that they would obtain a search warrant if she refused to consent to a search. Karen

---

[1] We refer to Karen Marcus by her first name to avoid confusion.

also related that the police threatened that the entire family might spend the night in jail, if she refused to consent to the search. Karen testified that one of her daughters was very distraught, that she did not want her new home torn apart in a search, and that she was very upset that her son's behavior had brought the police to her home. Therefore, she signed the form without reading it and unwillingly guided the officers to the room used by defendant when he stayed at the house. Police found a Taurus .45 caliber semi-automatic handgun with five rounds in the chamber and an extra magazine in a box in a closet of the bedroom.

## II.

### A.

Defendant was indicted on two counts of attempted murder, N.J.S.A. 2C:5-1, 2C:11-3(a); four counts of aggravated assault, N.J.S.A. 2C:12-1(b)(1); one count of unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); and one count of possession of a handgun for an unlawful purpose, N.J.S.A. 2C:39-4(a).

Defendant filed a motion to suppress the evidence seized from his bedroom. Defendant argued that his mother's will had been overborne by police. He emphasized that she was frightened and believed she had no choice but to consent to a search of her house. Under the circumstances, defendant insisted that her consent to search was not voluntary.

7

The State argued that the warrantless search of the Marcus residence was reasonable because Karen consented to the search. The State emphasized that Karen read the consent-to-search form, knew she could refuse consent, and knew that the search would focus initially on the room recently occupied by her son. The State acknowledged that police informed Karen that they would obtain a search warrant if she refused consent, but argued that providing accurate information does not undermine an otherwise knowing and voluntary consent to search.

The motion court denied the motion to suppress, finding that Karen acted voluntarily and without coercion. The court generally credited and adopted Detective Acton's version of the events. The motion court noted that Karen admitted that the police advised her she could refuse and withdraw consent. The trial court further found that there was probable cause to search the premises, and therefore, it was not improper for the police to suggest that they would obtain a search warrant if Karen refused consent. The motion court acknowledged that Karen was undoubtedly upset and frightened and noted her admission that she yelled at her son for bringing trouble and "stuff" into her house. Yet, the motion court found that her fear about the presence of a gun and police officers in her house did not overwhelm her ability to consent to a search of the house.

The motion court also held that the police had no obligation to leave the premises as directed by Marcus. Furthermore, Marcus's earlier refusal to permit entry into his house did not nullify Karen's later consent. Additionally, the court mentioned that exigent circumstances justified the search, although the State had not advanced this argument.

Following the denial of his motion to suppress, defendant entered a conditional guilty plea to second-degree unlawful possession of a handgun. Pursuant to the plea agreement, defendant was sentenced to a five-year term of imprisonment subject to a three-year period of parole ineligibility. The remaining charges were dismissed.

B.

Defendant appealed the denial of the motion to suppress to the Appellate Division, which affirmed the denial of the motion. The panel found that Karen knowingly consented to a search of her adult son's bedroom because she was informed of her right to refuse, read the consent form, and signed it. The appellate panel also concluded that Karen's consent to search was not negated by her husband's earlier refusal. The panel emphasized that Marcus was not present when Karen consented to the search, "his refusal [was] no longer contemporaneous, and there was no finding that he was removed for the sake of avoiding his

9

objection" or that he would have continued to object by the time Karen agreed to the search.

This Court granted defendant's petition for certification limited to the issue of whether consent by an occupant to search premises is constitutionally effective against a third party when an absent co-tenant has objected to the search. 213 N.J. 531 (2013).

III.

A.

Defendant contends that Karen's consent to search after Marcus refused to grant consent was invalid under Georgia v. Randolph, 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208 (2006). Defendant maintains that there is a distinction between an objecting tenant who has been validly arrested and taken from the scene, and a tenant who has been taken and remains only a short distance away. Defendant urges this Court to reject a literal reading of the "physically present and objecting" requirements of Randolph, arguing that an objector's absence from the doorstep of his home should not necessarily preclude the objector from exercising his or her right to refuse consent, especially when the co-tenant remains in close proximity to his or her house. Defendant further contends that a co-tenant without superior authority over shared property should not be

10

permitted to overcome an objecting co-tenant's right to refuse consent.

Defendant further argues that the exception to the physical presence rule articulated in Randolph should not be limited to pretextual removals of an objector because it may be difficult to determine why a suspect was removed from the scene by the police. Defendant argues that, in this case, the appellate panel merely speculated that Marcus would have changed his refusal to consent after the police removed him from the premises.

Finally, defendant urges this Court to reject the language in Randolph implying that a third party has no standing to contest a search when he is not the objector to the search. Defendant contends that this language is dicta, and runs afoul of State v. Alston, 88 N.J. 211, 228-29 (1981) (granting automatic standing to any person who "has a proprietary, possessory or participatory interest in either the place searched or the property seized"). Defendant maintains that the automatic standing doctrine is firmly established and grants him standing to challenge the search of his parents' home in this State. Accordingly, the portion of the Randolph rule which indicates that standing is limited to the objecting co-tenant was based upon established federal law which has not been followed under our State Constitution.

11

The State maintains that a co-tenant's consent is valid against an absent and objecting co-tenant because the absent co-tenant "assumed the risk by living with others [who] . . . could grant police consent to enter and search." United States v. Matlock, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974). Furthermore, the United States Supreme Court's decision in Randolph established that a co-tenant must be physically present in order for his or her refusal to consent to be valid.

The State maintains that the Randolph rule should be limited to a common-authority tenant who is physically present and contesting the search's validity. Accordingly, it should not apply to cases where the evidence obtained over disputed consent is used against a non-objecting co-inhabitant. The State contends that a rule limiting the constitutional effectiveness of one's objection to only the objector best protects the diverging interests that are at stake in cases like the one before the Court. The State further contends that a different result would negate the validly accorded consent of a co-tenant to a search and result in police uncertainty about their authority to search.

Further, the State contends that Marcus's statements that police could not come into his home and should get off his property are irrelevant under Randolph because the police never

12

requested his consent to search.  The State also emphasizes that no evidence exists to support the suggestion that police removed Marcus or defendant for the purpose of thwarting denial of consent.  Moreover, forty-five minutes elapsed between Marcus's statements and Karen's consent, thus undermining the contention that Marcus's statements should be considered an "immediate challenge" to Karen's consent.

The State argues that Marcus's removal from the scene was proper, and his initial objection lost its force once he was validly arrested and detained.  Another co-tenant may later consent to a search of a shared premises because social custom does not vest the objection with perpetual effectiveness.

Finally, the State contends that, even in light of Marcus's objection, the police acted reasonably because there was probable cause to believe a loaded firearm was inside the trailer where Karen and three young children were present.  The State refers to Justice Breyer's concurrence from Randolph, stating that "the risk of an ongoing crime or other exigent circumstance can make a critical difference" and would thus make it reasonable for police to enter "even in the face of direct objection by the other."  Randolph, supra, 547 U.S. at 126-27, 126 S. Ct. at 1530, 164 L. Ed. 2d at 229-30 (Breyer, J., concurring).

IV.

13

Appellate courts reviewing a grant or denial of a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record.  State v. Elders, 192 N.J. 224, 243 (2007).  We accord deference to those factual findings because they "are substantially influenced by [an] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy."  Id. at 244 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).  Thus, appellate courts should reverse only when the trial court's determination is "so clearly mistaken 'that the interests of justice demand intervention and correction.'"  Ibid.

A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference.  State v. K.W., 214 N.J. 499, 507 (2013).  Therefore, a trial court's legal conclusions are reviewed de novo.  State v. Gandhi, 201 N.J. 161, 176 (2010).  Here, defendant accepts the facts as found by the trial court but urges that the governing law dictates that Karen's consent did not permit the warrantless search of his bedroom.

A.

New Jersey has retained the automatic standing rule of Jones v. United States, 362 U.S. 257, 80 S. Ct. 725, 4 L. Ed. 2d

14

697 (1960), overruled by United States v. Salvucci, 448 U.S. 83, 100 S. Ct. 2547, 65 L. Ed. 2d 619 (1980).  Under the automatic standing rule, virtually all defendants have standing to contest a search or seizure by police where they have either "a proprietary, possessory or participatory interest in either the place searched or the property seized," or if "possession of the seized evidence at the time of the contested search is an essential element of guilt."  Alston, supra, 88 N.J. at 228.  In this way, our courts have construed the New Jersey Constitution as affording New Jersey citizens greater protection against unreasonable searches and seizures than accorded under the United States Constitution.  State v. Johnson, 193 N.J. 528, 541 (2008).

The conclusion that a defendant has standing to challenge a search on state constitutional grounds is independent of and unrelated to whether that defendant has a reasonable expectation of privacy in the place searched or item seized.  Alston, supra, 88 N.J. at 225-27; see State v. De La Paz, 337 N.J. Super. 181, 193 (App. Div.) (holding that absence of evidence at suppression hearing regarding defendant's status and his expectation of privacy in place searched does not preclude determination of whether defendant's state constitutional rights were violated by warrantless search), certif. denied, 168 N.J. 295 (2001).  The rule's purpose is to avoid the need to sacrifice a defendant's

15

Fifth Amendment rights and admit to criminal activity in order to assert his Fourth Amendment rights to challenge the search or seizure.  Johnson, supra, 193 N.J. at 551.

Here, defendant clearly had a possessory interest in the property seized.  Alston, supra, 88 N.J. at 228-29.  Possession of the handgun is an essential element of several offenses faced by defendant.  Therefore, under New Jersey law, defendant has automatic standing to challenge the search and seizure of the firearm and ammunition.

B.

Both the United States Constitution and the New Jersey Constitution guarantee the right of people to be free of unreasonable searches and seizures in their homes.  U.S. Const. amend. IV; N.J. Const. art. I, ¶ 7.  "Indeed, 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'"  State v. Vargas, 213 N.J. 301, 313 (2013) (quoting United States v. U.S. Dist. Court, 407 U.S. 297, 313, 92 S. Ct. 2125, 2134, 32 L. Ed. 2d 752, 764 (1972)).  Thus, "our jurisprudence expresses a clear preference for police officers to secure a warrant before entering and searching a home."  State v. Brown, 216 N.J. 508, 527 (2014).  Warrantless searches are presumptively invalid.  Ibid.; State v. Frankel, 179 N.J. 586, 598, cert. denied, 543 U.S. 876, 125 S. Ct. 108, 160 L. Ed. 2d 128 (2004), overruled in part by State v. Edmunds,

16

211 N.J. 117 (2012). When a defendant challenges a warrantless search of a home, the State bears the burden of proving by a preponderance of the evidence that the search falls within one of the recognized exceptions to the warrant requirement. Brown, supra, 216 N.J. at 527.

Federal and New Jersey courts recognize the consent to search exception to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S. Ct. 2041, 2043-44, 36 L. Ed. 2d 854, 858 (1973); State v. Domicz, 188 N.J. 285, 305 (2006). The Fourth and Fourteenth Amendments of the United States Constitution require that consent must be voluntarily given and not the result of duress or coercion, express or implied. Schneckloth, supra, 412 U.S. at 248, 93 S. Ct. at 2059, 36 L. Ed. 2d at 875; Domicz, supra, 188 N.J. at 307. To determine whether a person voluntarily consented to a search, the focus of the analysis is "whether a person has knowingly waived [his or her] right to refuse to consent to the search." Domicz, supra, 188 N.J. at 308; see State v. Johnson, 68 N.J. 348, 353-54 (1975) (establishing standard of voluntary consent under state constitution "as knowing and intelligent waiver, which includes knowledge of right to refuse consent"). The State has the burden of proving consent was given freely and voluntarily. Schneckloth, supra, 412 U.S. at 248, 93 S. Ct. at 2059, 36 L. Ed. 2d at 875; Elders, supra, 192 N.J. at 246.

17

A co-habitant who possesses common authority over or has a sufficient relationship to the premises or effects sought to be inspected may voluntarily consent to a lawful search. Matlock, supra, 415 U.S. at 171, 94 S. Ct. at 993, 39 L. Ed. 2d at 250. In Matlock, the defendant was arrested outside of his home. Id. at 166, 94 S. Ct. at 991, 39 L. Ed. 2d at 247. Without asking the defendant, police knocked on the door and asked the defendant's wife for consent to search the home. Ibid. The wife consented, and the defendant sought to suppress the evidence recovered during the search. Id. at 166-69, 94 S. Ct. 991-92, 39 L. Ed. 2d 247-48.

In explaining its rationale supporting the effectiveness of the wife's consent, the United States Supreme Court stated:

> The authority which justifies the third-party consent does not rest upon the law of property, with its attendant historical and legal refinements but rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-inhabitants has the right to permit the inspection in his own right and that the others have assumed the risk that one of their number might permit the common area to be searched.
>
> [Id. at 171 n.7, 94 S. Ct. at 993 n.7, 39 L. Ed. 2d at 250 n.7 (citations omitted).]

The Court concluded that the defendant's wife could have had actual authority to consent to a search but remanded to determine if the government presented sufficient evidence

18

establishing the wife's mutual control and use of the shared space.  Id. at 177, 94 S. Ct. at 996-97, 39 L. Ed. 2d at 253.

In Randolph, supra, the United States Supreme Court addressed whether the consent to search of one co-tenant overrides the objection of another physically present co-tenant. 547 U.S. 103, 126 S. Ct. 1515, 164 L. Ed. 2d 208.  The Court held that a warrantless search of a shared dwelling for evidence against a co-inhabitant over the express refusal of consent by a physically present resident cannot be justified as reasonable as to him on the basis of consent given to the police by another resident.  Id. at 120, 126 S. Ct. at 1526, 164 L. Ed. 2d at 226.

The Court emphasized that "[t]he constant element in assessing . . . reasonableness in the consent cases . . . is the great significance given to widely shared social expectations." Id. at 111, 126 S. Ct. at 1521, 164 L. Ed. 2d at 220.   The reasonableness of a search is "a function of commonly held understanding about the authority that co-inhabitants may exercise in ways that affect each other's interest."  Ibid. However, "there is no common understanding that one co-tenant generally has a right or authority to prevail over the express wishes of another, whether the issue is the color of the curtains or invitations to outsiders."  Id. at 114, 126 S. Ct. at 1523, 164 L. Ed. 2d at 222.

19

The Supreme Court, however, distinguished between an objector who is physically present and a potential objector who is nearby but not part of the conversation. Id. at 121, 126 S. Ct. at 1527, 164 L. Ed. 2d at 226. It stated that "if a potential defendant with self-interest in objecting is in fact at the door and objects, the co-tenant's permission does not suffice for a reasonable search, whereas the potential objector, nearby but not invited to take part in the threshold colloquy, loses out." Ibid. The majority noted that the distinction was formalistic, ibid., but stressed that

> [s]o long as there is no evidence that the police have removed the potentially objecting tenant from the entrance for the sake of avoiding a possible objection, there is practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it.
>
> [Id. at 121-22, 126 S. Ct. at 1527, 164 L. Ed. 2d at 226-27.]

Recently, the Supreme Court underscored the limited scope of Randolph in Fernandez, supra, 571 U.S. ___, 134 S. Ct. 1126, 188 L. Ed. 2d 25, by refusing to extend its ruling in Randolph to a situation in which a co-occupant consented to a search of the home she shared with the defendant after his arrest and removal from the scene. In Fernandez, the defendant was charged with various offenses, including robbery, and moved to suppress

20

the evidence seized from the search based on his prior refusal to consent to a search of the apartment. Id. at ___, 134 S. Ct. at 1131, 188 L. Ed. 2d at 32. In affirming the denial of his motion to suppress, the Court reiterated that the consent of one resident of jointly occupied premises is generally sufficient to justify a warrantless search. Id. at ___, 134 S. Ct. at 1133, 188 L. Ed. 2d at 34. The Court characterized the rule in Randolph as "a narrow exception," and emphasized that the rule is premised on the physical presence of the objecting occupant. Ibid.

In Fernandez, the police arrived at the residence in pursuit of the defendant, who had been identified as a participant in an armed robbery. Id. at ___, 134 S. Ct. at 1130, 188 L. Ed. 2d at 31. As they entered the building, police heard screams coming from an apartment. Ibid. A woman showing signs of recent injury answered a knock by police. Ibid. The defendant appeared at the door and refused consent for police entry to conduct a protective sweep. Ibid. Suspecting the defendant of assaulting the woman, police arrested the defendant and removed him from the apartment. Ibid. Approximately an hour later, police returned to the apartment, told the woman that the defendant had been arrested, and asked for and received oral and written consent to search the apartment. Ibid. The search uncovered gang paraphernalia, a knife, clothing matching

21

the description of the robbery victim, and ammunition.  Id. at

___, 134 S. Ct. at 1130-31, 188 L. Ed. 2d at 31.

The Supreme Court characterized the discussion in Randolph

of the effect of removal of the objecting occupant by police as

dictum.  Id. at ___, 134 S. Ct. at 1134, 188 L. Ed. 2d at 35.

The Supreme Court explained that this discussion "is best

understood . . . to refer to situations in which the removal of

the potential objector is not objectively reasonable," and held

"that an occupant who is absent due to a lawful detention or

arrest stands in the same shoes as an occupant who is absent for

any other reason."  Ibid.

The Court also declined to place any limits on how long an

objection may be effective.  Id. at ___, 134 S. Ct. at 1135, 188

L. Ed. 2d at 35-36.  Indeed, the Court noted that a durational

limit divorced from the objecting occupant's presence is not

consistent with the narrow exception crafted by Randolph.  Ibid.

In New Jersey, as under federal law, consent may be

obtained from a third party so long as the consenting party has

the authority to bind the other party.  State v. Suazo, 133 N.J.

315, 320 (1993); State v. Crumb, 307 N.J. Super. 204, 242 (App.

Div. 1997), certif. denied, 153 N.J. 215 (1998).  In order to

determine whether valid consent to search an area was given by a

third party, the State must prove the third party possessed

common authority over or other sufficient relationship to the

22

premises or the effects sought to be inspected. State v. Douglas, 204 N.J. Super. 265, 276 (App. Div.) (quoting Matlock, supra, 415 U.S. at 168-70, 94 S. Ct. at 992-93, 39 L. Ed. 2d at 248-50), certif. denied, 102 N.J. 378 (1985); see also Illinois v. Rodriguez, 497 U.S. 177, 188, 110 S. Ct. 2793, 2801, 111 L. Ed. 2d 148, 161 (1990) (holding police had reasonable basis to believe that former girlfriend and roommate, who invited police to search defendant's apartment and produced key to premises, had control of premises to authorize entry and search). Further, a search may still be effective even where the occupant requests that no consent be given by the co-occupant. Douglas, supra, 204 N.J. Super. at 277 (citing 2 W. LaFave, Search and Seizure § 8.3, 710-11 (1978)). No New Jersey cases have considered the constitutionality of a search as to a third tenant against whom the government wished to use evidence seized after a search with consent of one co-tenant subject to the contemporaneous objection of another.

V.

We acknowledge that defendant has standing to challenge the consent to search granted by his mother. The record reveals that he stayed on an occasional but recurring basis in the home of his mother and stepfather, and occupied the same bedroom in the house whenever he visited.

23

The focus of this appeal is whether the strenuously expressed statements by defendant's stepfather that the police should remove themselves immediately from the premises overrides the later consent given by defendant's mother. We conclude the rule announced in Randolph, supra, does not render the consent given by defendant's mother nugatory and the search unreasonable.

First, Randolph is a very narrow holding. The Supreme Court recognized that it was drawing a fine and formal line but justified the ruling as providing "practical value in the simple clarity of complementary rules, one recognizing the co-tenant's permission when there is no fellow occupant on hand, the other according dispositive weight to the fellow occupant's contrary indication when he expresses it." 547 U.S. at 121, 126 S. Ct. at 1526, 164 L. Ed. 2d at 226-27.

The Supreme Court also emphasized that a search predicated on the consent of one co-tenant over the objection of another co-tenant renders the warrantless search constitutionally infirm as to the objecting co-tenant. Id. at 120, 126 S. Ct. at 526, 164 L. Ed. 2d at 225-26. Thus, even in the face of Marcus's demand that the police leave his property, Karen's consent does not render the search constitutionally unreasonable as to defendant. We also note that neither Detective Acton nor Karen testified that Marcus renewed his objection to the police

24

presence at the time he agreed to leave the house almost an hour after his initial objections.

In addition, despite defendant's authority to consent or refuse consent to a warrantless search of the house, the record clearly reveals that defendant agreed to leave the house after protracted telephonic discussions between the police and Marcus and then Karen. The record provides no support that defendant's removal and Marcus's earlier exit from the house were designed to prevent either occupant from objecting to the warrantless search of the room defendant occupied over this holiday weekend. Indeed, the police had probable cause to arrest defendant for the earlier shooting and to detain Marcus once he left the house.

Finally, any doubt that police conduct did not comport with the limited holding in Randolph is resolved by Fernandez. As recognized in Fernandez, supra, an occupant who is absent due to a lawful detention or arrest is in the same position as an occupant who is absent for any reason. 571 U.S. at ___, 134 S. Ct. at 1134, 188 L. Ed. 2d at 35. Thus, we are not confronted with the exception to the fine and formal rule announced in Randolph, supra, of police removal of an objecting co-tenant to avoid a possible refusal. 547 U.S. at 121, 126 S. Ct. at 121-22, 164 L. Ed. 2d at 227. Moreover, by virtue of his removal from the immediate scene, Marcus's earlier objection to police

was no longer effective, Fernandez, supra, 571 U.S. at ___, 134 S. Ct. at 1135-36, 164 L. Ed. 2d at 35-37, and Karen had full authority to consent to a search of her home, id. at ___, 134 S. Ct. at 1137, 164 L. Ed. 2d at 38.

Finally, this Court must recognize, as did the motion court and the appellate panel, that the circumstances surrounding the consent obtained from Karen were infused with exigency. To be sure, the State did not rely on exigency to support the validity of the consent search of the Marcus house. Nevertheless, once police located defendant and received information from his girlfriend that corroborated the earlier report of a shooting and that the gun may have been in the house, the police were faced with a critical situation. The Marcus house was small, no more than 880 square feet, and located in close proximity to other dwellings. Once defendant's girlfriend, Marcus, and finally defendant left the dwelling, Karen remained inside with three very young children in close proximity to a loaded gun. See De La Paz, supra, 337 N.J. Super. at 195-96 (identifying several factors that indicate exigent situation justifying warrantless entry).[2]

_____

[2] We also conclude that the motion judge's finding that Karen's consent to search her house was knowing and voluntary is consistent with governing law. The entire incident, lasting from 11:30 p.m. on July 3 to 2:30 a.m. on July 4, was undoubtedly stressful. Police had arrived at her home seeking her son, who dove under a bed to hide from police. Karen was

26

Reasonableness is the touchstone of the Fourth Amendment analysis. Rodriguez, supra, 497 U.S. at 185, 110 S. Ct. at 2800, 111 L. Ed. 2d at 159. The record in this appeal attests to a reasonable police response to a violent episode calculated to obtain the expeditious arrest of the shooter and seizure of a potentially loaded weapon. There is no suggestion that the police contrived the absence of any occupant to frustrate a physically present occupant's ability to consent to a search of the home. The police procured from the remaining adult occupant a knowing and voluntary consent to search the residence in which the suspected shooter was staying and the warrantless search was reasonable under the circumstances of this appeal.

VI.

The judgment of the Appellate Division is, therefore, affirmed.

---

clearly fearful that police would rip apart her new home, and she was also extremely annoyed that her son had brought a gun into her home. She also had to cope with three young children who were emotionally distraught by the commotion caused by the arrival of the police. Nevertheless, the record clearly supports the determination of the Appellate Division that the police requested her consent only after they had been in communication with her for a significant period of time. Her will had not been overborne, her decision was not rushed, and she knew she could refuse consent. In fact, the record reveals that the police communicated with Karen in a deliberate but firm manner that seemed to be calculated to permit a reasonable and timely resolution to a very tense and possibly explosive situation.

CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, and PATTERSON, and JUDGE RODRÍGUEZ (temporarily assigned) join in JUDGE CUFF's opinion.

SUPREME COURT OF NEW JERSEY

NO. __A-37___                           SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____


STATE OF NEW JERSEY,

        Plaintiff-Respondent,

                v.

MICHAEL W. LAMB,

        Defendant-Appellant.


DECIDED _____May 19, 2014_____
_____Chief Justice Rabner_____ PRESIDING
OPINION BY _____Judge Cuff_____
CONCURRING/DISSENTING OPINIONS BY _____
DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 6 | |

1