**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5132-14T4

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

LARRY AUSTIN,

    Defendant-Appellant.

_____

Submitted April 27, 2017 - Decided  May 25, 2017

Before Judges Hoffman and Mawla.

On appeal from Superior Court of New Jersey,
Law Division, Hudson County, Indictment No.
11-03-0410.

Joseph E. Krakora, Public Defendant, attorney
for appellant (Stephen W. Kirsch, Assistant
Deputy Public Defender, of counsel and on the
brief).

Esther Suarez, Hudson County Prosecutor,
attorney for respondent (Erin M. Campbell,
Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Larry Austin appeals from a March 21, 2013 order denying his motion to suppress evidence. Defendant entered a negotiated agreement pleading guilty to the first-degree crimes of aggravated manslaughter, N.J.S.A. 2C:11-4(a), and two counts of armed robbery, N.J.S.A. 2C:15-1, for which he was sentenced to a forty-four year term of incarceration, subject to the 85% parole ineligibility period required by the No Early Release Act (NERA), N.J.S.A. 2C:43-7.2. Defendant additionally challenges the imposed sentence as excessive. Because we find the warrantless search yielding the evidence defendant sought to suppress was undertaken by consent, and because the imposition of consecutive sentences for defendant's convictions were properly supported by the trial judge's findings, we affirm.

These facts are taken from the suppression hearing. Defendant sought to suppress the evidence police obtained from a residence he shared with his mother and brother by way of a warrantless search. The trial judge denied defendant's motion in a written opinion, and on September 9, 2014, defendant subsequently pled guilty to aggravated manslaughter and two counts of first-degree robbery. As a part of his plea, defendant admitted that on September 4, 2010, he robbed three victims in Jersey City at gunpoint, inflicting bodily injury on two victims, and fatally shooting the third victim in the back of the neck. On October 23,

2014, the trial judge sentenced defendant to a total of forty-four years with 85% parole ineligibility - twenty-four years for the aggravated manslaughter, and two ten-year terms - one for each robbery, all three sentences to run consecutively to one another.

On appeal, defendant contends:

POINT I

DEFENDANT'S MOTION TO SUPPRESS THE ITEMS SEIZED SHOULD HAVE BEEN GRANTED; POLICE WERE OBLIGATED TO ASK HIM WHETHER HE CONSENTED TO THE SEARCH OF THE APARTMENT WHERE HE LIVED WHEN HE WAS THE SUSPECT IN THE CASE AND, AT THE TIME, PRESENT AT THE SCENE, RATHER THAN ASKING ANOTHER OCCUPANT OF THE HOME FOR CONSENT INSTEAD, THEREBY PURPOSELY BYPASSING DEFENDANT.

POINT II

THE SENTENCE IMPOSED APPEARS TO BE BEYOND THE UPPER LIMIT OF THE TERMS OF THE PLEA BARGAIN; IT IS ALSO MANIFESTLY EXCESSIVE, THEREBY REQUIRING A REMAND FOR RESENTENCING.

We examine each of these arguments. This court "reviewing a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Elders, 192 N.J. 224, 243 (2007)(internal citations omitted). See also State v. Alvarez, 238 N.J. Super. 560, 564 (App. Div. 1990)(holding that the standard in reviewing a motion to suppress is whether the

"findings made by the judge could reasonably have been reached on sufficient credible evidence present in the record.")

The United States Constitution and the New Jersey Constitution both guarantee the right of persons to be free from unreasonable searches and seizure in their home. U.S. Const. amend. IV; N.J. Const. art. I, ¶7. Warrantless searches are presumptively invalid unless, among other exceptions, voluntary consent to the search, without coercion or duress, is provided. Schneckloth v. Bustamante, 412 U.S. 218, 219, 93 S. Ct. 2041, 2059, 36 L. Ed. 2d 854, 875 (1973); State v. Domicz, 188 N.J. 285, 308 (2006). Our Supreme Court has held that in order for a search "[t]o be voluntary, the consent must be 'unequivocal and specific' and 'freely and intelligently given.'" State v. King, 44 N.J. 346, 352 (1965) (quoting Judd v. United States, 89 U.S. App. D.C. 64, 66, 190 F. 2d 649, 651 (D.C. Cir. 1951)). Further, when consent to search is sought, our law holds that the individual from whom consent is sought must have "knowledge of the right to refuse consent." State v. Johnson, 68 N.J. 349, 354 (1975).

Consent may be provided by a third party with lawful authority over the premises or objects to be searched. United States v. Matlock, 415 U.S. 164, 170, 94 S. Ct. 988, 993, 39 L. Ed. 2d 242, 249 (1974). That third party may be a co-occupant of the premises. Id. at 171, 94 S. Ct. at 993, 39 L. Ed. 2d at 250. A co-occupant's

4

consent will be deemed invalid if the other occupant/target of the search is present and objects to the search. Georgia v. Randolph, 547 U.S. 103, 110, 122-23 S. Ct. 1515, 1528, 164 L. Ed. 2d 208, 227 (2006). However, where both co-occupants are present, our law does not require that police poll each one for consent. Id. at 122, 126 S. Ct. at 1527, 164 L. Ed. 2d at 227. In Randolph, the United States Supreme Court held that requiring the police "to find a potentially objecting co-tenant before acting on the permission they had already received . . . [would devolve] into a test about the adequacy of the police's efforts to consult with a potential objector." Ibid.

Recently, in State v. Lamb, 218 N.J. 300 (2014), our Supreme Court upheld a warrantless search by consent where the stepfather of a defendant refused a request to search. The defendant and his stepfather then left the residence. Id. at 305. Police were then contacted by the defendant's girlfriend who provided the police with information, giving them probable cause to arrest the defendant while he was away from the residence. Ibid. Police then obtained consent from defendant's mother who remained at the residence. Ibid. The Lamb Court found the probable cause to arrest defendant and the stepfather's exit from the residence were not "designed to prevent either occupant from objecting to the warrantless search." Id. at 320.

Here, the trial judge conducted a three-day hearing and considered the testimony of six witnesses, including the arresting officers and witnesses presented by defendant. Police obtained a warrant for defendant's arrest on September 4, 2010. That afternoon, police arrested and Mirandized defendant at a convenience store nearby his residence. He was transported to his residence in a police vehicle. Once there, police informed his mother defendant had been arrested and was in the vehicle. Defendant's mother went to the vehicle and was able to speak to him. Thereafter, police accompanied defendant's mother to the residence and sought consent to search it. Defendant's mother confirmed she was a legal resident of the apartment, which she shared with defendant and his brother, and was advised of her right to refuse or terminate the search. She verbally consented and executed a consent form before the search commenced.

We have found where there is a mutual residence, a third-party's consent to search is colored by whether the third-party "possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." State v. Miller, 159 N.J. Super. 552, 557 (App. Div. 1978) (quoting Matlock supra, 415 U.S. at 169-72, 94 S. Ct. at 993, 39 L. Ed. 2d at 250). The authority of the third-party:

> [R]elies not upon the law of property, [b]ut rests rather on mutual use of the property by persons generally having joint access or control for most purposes, so that it is reasonable to recognize that any of the co-habitants has the right to permit the inspection in his own right and that others have assumed the risk that one of their number might permit the common area to be searched.
>
> [Id. at 557-58 (quoting Matlock, supra, 415 U.S. at 169-72, 94 S. Ct. at 992-93, 39 L. Ed. 2d at 248-50).]

Here, the trial judge found police seized defendant's jeans, bearing brown stains believed to be blood spatter, from a chair in the common kitchen area. It was reasonable for the trial judge to conclude defendant's mother had authority to access the kitchen. Similarly, the trial judge was correct to conclude defendant assumed the risk his jeans would be discovered when he left them in the common area of the kitchen. It was also reasonable for the trial court to conclude defendant's mother possessed authority to consent to search his bedroom, which he shared with his brother, because she was on the lease and because she entered to wake defendant's brother after police entered the apartment. In defendant's bedroom, police seized other evidence including three shotgun shells, three cell phones, an mp3 player, three spiral notebooks, thirty-six dollars, and a Probation notice. No evidence exists of either he or his brother restricting their mother's right to entry before she provided the police with both verbal and

written authorization to search the entire apartment. Because the consent provided by defendant's mother was valid as to the entire residence, we decline to invalidate the search on account of defendant's brother's after-the-fact refusal to sign the consent to search form. In other words, the fact the brother did not sign the consent to search does not disrupt or affect the search of his bedroom already underway and authorized by his mother's consent. The factual findings of the trial judge are supported by substantial, credible evidence in the record.

We discern no basis to disturb the trial judge's findings the consent here was unequivocal, voluntary, and knowing. No evidence of either coercion or duress exists in the record before us. No evidence exists of police inappropriately detaining defendant for the purpose of obtaining consent from his mother. Defendant's detainer was pursuant to a valid arrest warrant. Moreover, the police did not search his residence until consent was validly obtained. For these reasons, the trial judge's denial of defendant's motion to suppress is affirmed.

Defendant next challenges as excessive and beyond the upper limits of his plea the length of his aggregate sentence of forty-four years with 85% parole ineligibility. He also challenges the imposition of consecutive rather than concurrent sentences.

We review a sentence to discern whether the trial court's findings were "based upon findings of fact that are grounded in competent, reasonably credible evidence[;]" whether the trial court applied the "correct legal principles in exercising its discretion[;]" and whether the sentence should be modified due to "such a clear error of judgment that it shocks the judicial conscience." State v. Roth, 95 N.J. 334, 363-64 (1984). If we are convinced the trial court's sentence does not violate the sentencing guidelines, the court made adequate findings of the aggravating and mitigating factors based on the evidence, and its determination is not clearly unreasonable, we will affirm the sentencing determination. See Id. at 364-65.

Where a defendant challenges the imposition of a consecutive sentence, we must determine whether the trial court properly considered the following factors:

> (a) the crimes and their objectives were predominantly independent of each other;
>
> (b) the crimes involved separate acts of violence or threats of violence;
>
> (c) the crimes were committed at different times or separate places rather than being committed so closely in time and place as to indicate a single period of aberrant behavior;
>
> (d) any of the crimes involved multiple victims;

(e) the convictions for which the sentences are to be imposed are numerous.

[State v. Yarbough, 100 N.J. 627, 644 (1985), cert. denied, 475 U.S. 1014, 106 S. Ct. 1193 89 L.Ed. 2d 308.

In urging reversal of his sentence, defendant argues that he did not receive the benefit of his bargain by agreeing to a plea in exchange for a lesser sentence. Defendant acknowledges his plea was "open," but suggests his expectation was the term of incarceration would not exceed thirty-three years.

At defendant's September 9, 2014 plea hearing, the State clearly expressed its intention to seek a sentence up to seventy years:

> [The Prosecutor]: It is the state's understanding that the defendant will plead guilty on indictment 0410-03 of the 2011 term on Count One as amended to charge aggravated manslaughter. In exchange for that guilty plea, the State will be free to [seek] up to thirty years in New Jersey State Prison with eighty-five percent parole ineligibility.
>
> The defendant will plead guilty to count four of the indictment charging armed robbery in the first degree. In exchange for that guilty plea, the State will be free to [seek] up to twenty years in New Jersey state prison with eighty-five percent parole ineligibility.
>
> The defendant will plead guilty to count five of the indictment charging armed robbery in the first degree. The State will be free to [seek] up to twenty years [in] New Jersey state prison with eighty-five percent parole ineligibility.

> The State will be asking that those sentences run consecutively to one another.

Likewise, the pre-sentence report sets forth an aggregate term of seventy years sought by the State. The plea form initialed and signed by defendant clearly sets forth the seventy years sought by the State. The plea agreement recites the thirty-three years, which defendant asserts should have been the maximum; however, the context, as stated on the plea form, notes this represents the 85% parole ineligibility period as applied to a forty-four year sentence.

Defendant also argues the imposition of three consecutive terms was excessive given his lack of an adult criminal record. While defendant acknowledges that some form of consecutive sentence was appropriate, he urges that the robberies should have been considered one crime whose sentence should have run consecutive to the homicide as opposed to two separate robbery sentences running consecutive to each other and to the homicide.

Our role in reviewing a sentence is not to discern whether a different sentence should have been imposed, but whether "there is a 'clear showing of abuse of discretion.'" State v. Bolvito, 217 N.J. 221, 228 (2014) (quoting State v. Whitaker, 79 N.J. 503, 512 (1979)). As our Supreme Court stated in Yarbough, "there can

be no free crimes in a system for which the punishment shall fit the crime."  Yarbough, supra, 100 N.J. at 643.

The trial judge's sentence is sound.  As noted in the transcript of the sentencing proceeding, the trial judge considered the presentence report, the arguments of counsel, statements on behalf of defendant himself and family members, the deceased victim's mother, and one of the victims.  The trial court considered defendant's juvenile record, which it found contained similar crimes of theft.  The trial judge found two aggravating factors and no mitigating factors favoring defendant.  We see no basis to disturb these findings; they are based on the credible evidence in the record.

Next, the judge reviewed the applicable Yarbough guidelines and concluded that defendant committed three separate crimes against three separate victims.  Although the crimes were close in time, the trial judge rejected the suggestion defendant's conduct constituted a single period of aberrant behavior.  He found the crimes involved separate acts or threats of violence and the victims were "separately targeted," two beaten and one shot, suggesting distinct objectives.  The judge recited the specific circumstances affecting each victim and stated: "There couldn't be a better example of any one incident being very separate and distinct acts of violence."

Not all six <u>Yarbough</u> factors must be present.  In fact, "a sentencing court may impose consecutive sentences even though a majority of the <u>Yarbough</u> factors support concurrent sentences." <u>State v. Carey</u>, 168 <u>N.J.</u> 413, 427-28 (2001).  Apt to this matter, our Supreme Court has held "crimes involving multiple victims represent an especially suitable circumstance for the imposition of consecutive sentences because the 'total impact of singular offenses against different victims will generally exceed the total impact on a single individual who is victimized multiple times.'" <u>State v. Molina</u>, 168 <u>N.J.</u> 436, 442 (2001) <u>Ibid</u>. (quoting <u>State v. Carey</u>, 168 <u>N.J.</u> 413, 775 A.2d 495 (2001) (quoting <u>People v. Leung</u>, 5 <u>Cal. App.</u> 4th 482, 7 <u>Cal. Rptr.</u> 2d 290, 303-04 (1992)). Accordingly, "the multiple-victims factor is entitled to great weight."  <u>Ibid</u>.

Our review reveals the judge's findings are based on the credible evidence in the record and he properly considered and weighed the applicable factors when considering the appropriateness of imposing consecutive or concurrent sentences.  We conclude the judge did not abuse his discretion by imposing consecutive sentences.  <u>See</u> <u>Yarbough</u>, <u>supra</u>, 100 <u>N.J.</u> at 630 (stating "sentencing courts should be guided by the Code's paramount sentencing goals that punishment fit the crime, not the criminal . . . ").

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-5132-14T4