**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2738-18T1

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

SEAN LOWNEY, a/k/a
SEAN LOWMEY,

     Defendant-Appellant.

---

Argued telephonically March 10, 2020 –
Decided July 20, 2020

Before Judges Fisher and Accurso.

On appeal from the Superior Court of New Jersey,
Law Division, Atlantic County, Indictment No. 17-07-
1541.

John P. Flynn, Assistant Deputy Public Defender,
argued the cause for appellant (Joseph E. Krakora,
Public Defender, attorney; John P. Flynn, of counsel
and on the briefs).

Daniel A. Finkelstein, Deputy Attorney General,
argued the cause for respondent (Gurbir S. Grewal,
Attorney General, attorney; Daniel A. Finkelstein, of
counsel and on the brief).

PER CURIAM

Following the denial of his motion to suppress evidence seized in a warrantless search, defendant Sean Lowney entered a guilty plea in a negotiated agreement to third-degree possession with intent to distribute heroin, N.J.S.A. 2C:35-5(a)(1), and second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5, and was sentenced to a prison term of five years, with a mandatory forty-two month period of parole ineligibility. Defendant appeals, raising the following issues:

POINT I

THE MOTION TO SUPPRESS SHOULD HAVE BEEN GRANTED BECAUSE THE CONSENT TO SEARCH THE HOTEL ROOM WAS THE FRUIT OF AN UNLAWFUL DETENTION WITHOUT REASONABLE SUSPICION.

A. The Trial Court Erred in Finding that the Police did not Detain Co-Occupant [] Because No Reasonable Person Would Feel Free to Terminate the Encounter With the Police Under the Circumstances of This Case.

B. The Trial Court Erred in Finding That Detective Corcoran had Reasonable and Articulable Suspicion to Detain Co-Occupant [] Prior to Asking for her Consent to Search the Hotel Room for Victims of Human Trafficking.

A-2738-18T1

POINT II

BECAUSE THE POLICE FAILED TO OBTAIN
LOWNEY'S CONSENT TO SEARCH THE HOTEL
ROOM EVEN THOUGH HE WAS ON SCENE AND
SUSPECTED OF WRONGDOING, THE SEARCH
OF THE HOTEL ROOM WAS
UNCONSTITUTIONAL AND THE EVIDENCE
SEIZED SHOULD HAVE BEEN SUPPRESSED.

POINT III

EVEN IF THE POLICE VALIDLY OBTAINED
CONSENT FROM CO-OCCUPANT [], THE
EVIDENCE SEIZED SHOULD HAVE BEEN
SUPPRESED BECAUSE THE POLICE EXCEEDED
THE SCOPE OF THE CONSENT TO SEARCH FOR
VICTIMS OF HUMAN TRAFFICKING.

Detective Sergeant Corcoran, supervisor of the vice unit in the Atlantic

City Police Department testified at the suppression hearing to the

circumstances giving rise to defendant's arrest.  He explained he was

dispatched to a local hotel known for its "high incidence" of prostitution, and

where his department had only recently completed a human trafficking case,

on a report of an altercation between two women.

When he arrived, the desk clerk claimed a guest at the hotel, later

identified as defendant, had threatened to punch her in the face when she tried

to break up the fight between the two women.  The clerk provided him with an

identification card defendant had deposited with the hotel, which the detective immediately recognized as a fake document. As the detective walked toward the room where the fight was happening, he saw the two women and defendant. He recognized one of the women based on prior arrests for prostitution. The other woman, he shortly learned, was with defendant.

As defendant walked toward the detective, the detective directed him to stop, and that he needed to speak to him. Defendant stated he didn't need to talk to the detective and went by him into the lobby. The detective followed and told defendant he needed to detain him until he could figure out what was going on. When defendant used profanity and threatened to harm the detective, the detective placed defendant in handcuffs and advised him he was under arrest.

Defendant and the woman the detective did not know told the officer they were married, and the woman produced the same sort of fake I.D. defendant had provided the hotel, bearing defendant's last name. Suspicious that the woman could be a victim of human trafficking, Detective Corcoran testified he determined to separate the two in order to speak to the woman alone.

4

While another officer escorted defendant to a squad car, the detective spoke to defendant's companion. The detective claimed the woman had been agitated, but calmed down once defendant was no longer present. She told the detective her name, and that she and defendant were not married. The detective testified that heightened his concern because false claims of marriage is "a tactic commonly used by pimps." In response to the detective's questions, the woman claimed defendant was not her pimp, and, indeed, had taken her away from her pimp, which the detective observed was "what pimps typically do."

The woman admitted to having been arrested for prostitution the year before but claimed she was no longer involved. When the detective asked how she and defendant were paying for the room registered to her, she claimed she was working as a stripper. When the detective asked her where she was working, the woman couldn't answer.

The detective testified he told the woman he "believed that she could be a victim of human trafficking," that he spent every day investigating those crimes, and "all the signs were there." The woman denied being a victim. When the detective asked whether she would mind if he "took a look in her room and made sure whether there was anybody else in there that could

possibly be victims," the woman signed a consent to search form. The detective testified he handed her the form, read it to her, and explained that she could refuse consent or withdraw it at any time. She told the officer he was free to look around, and that he "might just find some weed," but that would be all. Officers recovered a handgun from under the mattress, a bag of hollow-point bullets, a couple of bundles of heroin, a digital scale and glassine baggies.

After hearing the testimony, the judge denied the motion. The judge found Detective Corcoran a credible witness, who provided clear answers without hesitation to all questions, whether posed on direct or cross-examination. The judge rejected defendant's claim that the detective had unlawfully detained his companion. The judge found the detective had not "seized" his companion within the meaning of the Fourth Amendment, but was merely asking her questions to ascertain whether she was a victim of human trafficking. The judge also found that even if the detective had seized defendant's companion, that the detective's experience and the circumstances gave him reasonable suspicion that she was involved in prostitution, making any detention lawful.

6

The judge also rejected defendant's claim that his consent was required to search the hotel room registered to his companion. Relying on Fernandez v. California, 571 U.S. 292, 303 (2014) (holding "an occupant who is absent due to a lawful detention or arrest stands in the same shoes as an occupant who is absent for any other reason"), the judge found defendant's lawful arrest rendered him absent, making his companion's consent all that was necessary for a lawful search of the motel room without a warrant. See United States v. Matlock, 415 U.S. 164, 171-72 (1974) (holding a cohabitant with common authority over the premises may consent to its lawful search).

Finally, the judge rejected defendant's claim that even if his companion's consent was lawfully obtained, police exceeded the scope of her consent to search for victims of human trafficking. The judge found defendant's reliance on the detective's statement that he sought permission to "look for human trafficking victims" was not reflective of the officer's whole testimony. The judge acknowledged the detective's statement relied on by defendant, but noted throughout the remainder of his testimony the detective credibly explained he sought the opportunity "to look for other indicia of human trafficking," such as ledgers, I.D.s, a computer or the like. Further, the judge found the consent form defendant's companion signed, which gave police express permission to

7

search for and remove letters, documents, papers and other materials, made her "fully aware of what's going to be searched for when they go into this room." Defendant reprises the same arguments he made to the trial court on this appeal.

Our standard of review on a motion to suppress is limited. State v. Gamble, 218 N.J. 412, 424 (2014). "Appellate courts reviewing a grant or denial of a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record." State v. Lamb, 218 N.J. 300, 313 (2014). "Deference to these factual findings is required because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Gamble, 218 N.J. at 424-25 (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Our review of the trial court's application of the law to the facts, of course, is plenary. State v. Hubbard, 222 N.J. 249, 263 (2015).

Having reviewed the motion transcript and the governing law, defendant has given us no cause to disturb the judge's factual findings or legal conclusions here. The only issue defendant raises requiring any discussion is whether his companion was unlawfully detained, arguably vitiating her

voluntary consent to search. His remaining issues are without merit. See R. 2:11-3(e)(2).

Based on the detective's description of his interaction with defendant's companion, which the judge determined was credible, he concluded the encounter was no more than a field inquiry that is a voluntary conversation between a citizen and a police officer. See State v. Stampone, 341 N.J. Super. 247, 252 (App. Div. 2001). As the judge correctly noted, "a field [inquiry] is not a Fourth Amendment event 'so long as the officer does not deny the individual the right to move.'" State v. Egan, 325 N.J. Super. 402, 409 (Law Div. 1999) (quoting State v. Sheffield, 62 N.J. 441, 447 (1973)); see also State v. Rosario, 229 N.J. 263, 273-74 (2017).

Of course, whether a police/citizen encounter is only a field inquiry or something more "is always fact-sensitive and similar facts, when mixed and matched with other circumstances, will produce varying legal conclusions." Stampone, 341 N.J. Super. at 252. Here, only the detective testified, and it was his version of the encounter that the judge was called to evaluate. The officer's demeanor is always relevant to the analysis, and here, the judge found, based on the detective's testimony, that his "questions were put in a conversational manner," were not "overbearing or harassing," and he "did not

9

make demands or issue orders" to defendant's companion. State v. Rodriguez, 172 N.J. 117, 126 (2002) (quoting State v. Davis, 104 N.J. 490, 497 n.6 (1986)). The judge specifically found the woman "had the ability to leave and stop the questions." As all of those findings have adequate support in the record, they are binding on this appeal, see Lamb, 218 N.J. at 13, and establish the encounter as a field inquiry, not an investigative detention, see Rodriguez, 172 N.J. at 126.

Because we agree with the trial court that the vice detective did not unlawfully detain defendant's companion, we have no cause to question the judge's finding that her consent to search the hotel room was voluntary. See State v. Smith, 155 N.J. 83, 101 (1998) (holding "[a] consent to search that is attributable to police misconduct involving the violations of constitutional rights may be regarded as the product of that unconstitutional conduct and an invalid basis on which to justify a search"). We also agree that as defendant does not challenge the legality of his arrest, Fernandez makes plain his companion's consent to search their hotel room was sufficient. See Lamb, 218 N.J. at 320 (noting Fernandez recognized that "an occupant who is absent due to a lawful detention or arrest is in the same position as an occupant who is absent for any reason"). His claim that the scope of the search exceeded his

A-2738-18T1

companion's consent is wholly belied by the terms of the consent form she signed.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2738-18T1