768 A.2d 818

STATE OF NEW JERSEY, PLAINTIFF–RESPONDENT,
v. KEITH LESLIE, DEFENDANT–APPELLANT.

Superior Court of New Jersey
Appellate Division

Argued November 14, 2000—Decided March 21, 2001.

Before Judges SKILLMAN, WECKER and LESEMANN.

*Theodore F.L. Housel*, argued the cause, for appellant.

*Lora B. Glick*, Deputy Attorney General, argued the cause, for respondent (*John J. Farmer, Jr.*, Attorney General, attorney; *Ms. Glick*, of counsel and on the brief).

The opinion of the court was delivered by

LESEMANN, J.A.D.

Defendant Keith Leslie appeals from his conviction and sentence to five years in prison for the second degree offense of possessing over five pounds of marijuana with intent to distribute, in violation of *N.J.S.A.* 2C:35–5a(1) and *N.J.S.A.* 2C:35–5b(10)(b). He pleaded guilty to that charge following denial of his motion to suppress evidence seized following a search of the trunk of a car he was driving on the Garden State Parkway. The search disclosed approximately thirty pounds of marijuana, and it was that

finding which triggered defendant's indictment and, following denial of his motion to suppress, his plea and sentence.

Defendant claims that the state trooper who stopped his vehicle and made the search had no lawful basis for the stop. He claims further that, even assuming the stop was justified, there was no basis for a search of his vehicle, and that the scope of his alleged consent to search, which the State contends justified the trooper's action, was exceeded when the officer went beyond the passenger compartment of the vehicle and opened the trunk. We conclude that, even assuming the validity of the stop and the consent to search, the entry into and search of the trunk of the vehicle exceeded the scope of the consent. For that reason, defendant's motion should have been granted and the seizure of the evidence suppressed. Thus, we reverse.

State Trooper David Smith, the officer who stopped and searched defendant's vehicle and then arrested him, was the only witness at the suppression hearing. Trooper Smith was a member of the Garden State Parkway Task Force, one of whose main functions was to be "proactive" in looking for and combating DWI offenders as well as "the criminal element" driving on the Garden State Parkway. He testified that at the time in question, he saw defendant's vehicle drive past him at approximately fifty miles per hour in an area where the speed limit was sixty-five miles per hour. As defendant passed the trooper, and presumably when he saw the police vehicle, he reduced his speed to forty-three miles per hour.[1] Trooper Smith testified that such a low speed suggested possible driving while intoxicated (DWI) since, in his experience, he has found that intoxicated drivers tend to overcompensate by driving slower than normal. The possibility of DWI was enhanced to the trooper by the further slow-down from fifty miles per hour to forty-three miles per hour as the vehicle passed him.

---

[1] The speed limit on that part of the Garden State Parkway had been increased from fifty-five miles per hour to sixty-five miles per hour approximately two months earlier. There is no specific minimum speed required or posted on the Parkway.

The trooper also testified that, although traffic was light at the time, a vehicle driving behind defendant was required to make a sudden lane shift because of defendant's reduced speed.

When Trooper Smith signaled defendant's vehicle to stop, defendant did so. Other than the speed of the vehicle, there had been no indication of erratic driving or any other indicia of DWI. When the trooper approached the vehicle and spoke to defendant, he also saw no signs of DWI.

When Trooper Smith asked defendant for his license, registration and insurance card, defendant produced appropriate documentation for the rented vehicle but was unable to present a valid driver's license or insurance card. He identified himself as Donald Hawkins and provided an Atlantic City address. In response to the officer's question, he also described what he said were the number of points against his license. However, when the officer checked those items via radio, both the address and the point information proved false. The officer was asked what he did next and he responded as follows:

> At that point, I asked the driver if there was any type of identification inside the motor vehicle.
>
> He said no.
>
> I asked him would he mind if I took a look inside the passenger's compartment and he stated, no.
>
> I asked him that I would like him to sign an N.J.V.P. consent to search form indicating that his rights were advised pertaining to a car search.
>
> He said he had no problem doing that.
>
> I reviewed the document with the driver. Upon completion, he understood the consent form and signed the same willingly, freely.
>
> Q. Did he appear to understand everything that was on the form?
>
> A. Yes.

The officer said he then "entered the passenger's compartment." On the driver's door, he found a container with the name Keith Leslie. He asked defendant if his name was Keith Leslie, and defendant said it was not. The trooper then continued his search and, as he described it, "[a]t that point I entered the trunk of the vehicle." When he did so, he smelled marijuana. He then opened

a duffle bag that was in the trunk and found two large bales of marijuana.

On cross-examination, the trooper said he had "advised" defendant that, "I could take a look inside the motor vehicle. I did not exactly say where I was going to look. I just told him inside the motor vehicle." He acknowledged that he had told defendant his intention was "to search for identification."

The consent form which the officer presented to defendant, and which defendant signed during the roadside stop, contained printed material which refers to an authorization "to conduct a complete search of" a vehicle whose description is then to be inserted in the form. Trooper Smith did insert an appropriate description of the vehicle defendant was driving, and also wrote on the form, "all packages & compartments within." The printed material also stated that the person signing the form had "knowingly and voluntarily given my consent to the search described above," and had been "advised" and "fully understand[s] that I have the right to refuse giving my consent to search."

In denying defendant's suppression motion, the trial court focused primarily on the reason for the trooper's stopping defendant's vehicle, and the fact that defendant's subsequent lying to the officer had justified the further investigation to determine defendant's identity. The court concluded that defendant had signed the consent form "voluntarily, knowingly and intelligently ... with full knowledge that he had a right to refuse the consent at that time." The court did not specifically address the scope of the consent and whether it included a search of the vehicle's trunk.

We are satisfied, however, that the search to which defendant consented could not reasonably be construed as including the trunk of his vehicle. Thus, even assuming the validity of the vehicle stop and the officer's follow-up actions in questioning defendant, requesting his consent to search, and then obtaining a signed written consent to search, the evidence in question must be suppressed and the conviction and sentence reversed.

Trooper Smith's stated lawful purpose for the search was to identify defendant and the vehicle he was driving. That effort could reasonably include a search of the interior of the vehicle's passenger compartment, including particularly a glove compartment, a seat console or door pockets. Further, and most significantly, that is precisely what the trooper told defendant he wanted to search. In his own words, the officer said he told defendant he wanted to take "a look inside the passenger's compartment." He further testified that defendant expressed his consent to that search—the search described by the trooper—and he also made clear that the purpose of the requested search was to locate information to identify the driver. At no point in his testimony, whether on direct or cross-examination, did the trooper ever say that he mentioned the trunk of the vehicle or that he wanted to examine the trunk or anything other than what he had originally referred to: the passenger compartment of the vehicle.

 In *State v. Younger*, 305 *N.J.Super.* 250, 256, 702 *A.*2d 477 (App.Div.1997), this court said it was "clear," that "when police rely on a consent to search, the search that may be conducted pursuant thereto is limited by the scope, whether express or implied, of the consent." Consequently, when the purpose of searching a vehicle is to obtain the operator's license, or the vehicle's registration or insurance card in order to identify the vehicle or its operator, the search must be limited to those areas likely to produce those documents or that information.

The State argues that the signed consent here is broad enough to encompass a search of the trunk of defendant's vehicle. However, in reaching that conclusion, the State essentially disregards the trooper's acknowledgment as to what he told defendant he was seeking and what the consent form was intended to effect. There is no question, from the trooper's own testimony, that he told defendant he was seeking identification and—more importantly—that he wanted to take "a look inside the passenger's compartment." That was the limited search that the officer told defendant

he wanted to accomplish, and it was that limited search for which the officer asked defendant's consent.

The language of the written consent form did not expand that search area. The reference to "all packages and compartments within" is wholly consistent with the oral description the officer had already given defendant: the passenger compartment of the vehicle. In light of the officer's oral request and explanation to defendant, the only reasonable interpretation of the language on the written form is that the words "packages and compartments within" referred to packages and compartments within the passenger compartment—which is what the officer had said he wanted to search, and which would include areas where the missing documents would likely be found: a glove compartment, a console compartment, or door pockets within the passenger compartment of the vehicle.

Nowhere on the consent form is there any reference to the vehicle's trunk or any suggestion that the printed document was not consistent with the oral representation and request made by the officer. And surely it would be unreasonable to expect anyone in defendant's position to carefully parse all the general language of the consent document and then question the officer as to whether generalized language used on the form was consistent with or broader than the oral explanation given by the officer just a few minutes earlier. Although the trooper testified that he reviewed the consent form with defendant, he never said that he told the defendant he intended to search his trunk or that the search he proposed to conduct was broader than that which he had described initially, when he asked the defendant if he could take "a look inside the passenger's compartment."

■ In sum, the validity of a consensual search is limited by the scope of the consent given. Here, the search exceeded the scope of that consent, and thus the search was illegal and its results must be suppressed.

Reversed.