**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5060-18T4

STATE OF NEW JERSEY,

 Plaintiff-Respondent,

v.

TERRY E. DILLIGARD II,

 Defendant-Appellant.

_____

    Submitted May 12, 2020 – Decided July 17, 2020

    Before Judges Hoffman and Firko.

    On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Indictment Nos. 12-03-0036 and 12-03-0067.

    Joseph E. Krakora, Public Defender, attorney for appellant (Andrew Robert Burroughs, Designated Counsel, on the briefs).

    Gurbir S. Grewal, Attorney General, attorney for respondent (Daniel A. Finkelstein, Deputy Attorney General, of counsel and on the brief).

PER CURIAM

Defendant Terry Dilligard II appeals from the judgment of conviction entered by the Law Division on July 22, 2015.[1] On appeal, he challenges the September 4, 2014 trial court decision which denied his motion to suppress statements he provided to police and which denied, in part, suppression of evidence seized from his apartment. We affirm.

I.

On March 8, 2012, a Mercer County grand jury returned Indictment No. 12-03-0036, charging defendant with the following offenses: second-degree conspiracy to commit theft by deception and financial facilitation, pursuant to N.J.S.A. 2C:5-2, 2C:21-25(a) and 2C:21-25(b) (counts one and six); second-degree theft by deception, pursuant to N.J.S.A. 2C:20-4, 2C:20-2(b)(1)(a) and

---

[1] On April 8, 2016, defendant filed a petition for post-conviction relief (PCR) alleging, among other things, that his appellate counsel was ineffective for failing to challenge the trial court decision denying his suppression motion on direct appeal. On June 11, 2019, Judge Timothy P. Lydon issued an order granting defendant leave to file an appeal of the September 4, 2014 order denying his motion to suppress. Judge Lydon found defendant's trial counsel submitted a "transmittal of Adult Appeal" form signed August 6, 2015; however, defendant's appeal was not properly filed "as confirmed by the Office of the Public Defender in a letter dated April 7, 2016." Pursuant to Rule 3:22-11, the judge granted defendant forty-five days to file a direct appeal of the denial of his motion to suppress and all related claims raised in his PCR petition. The judge also dismissed defendant's PCR petition without prejudice, and further provided defendant may refile his PCR petition within ninety days of the date of our decision on his direct appeal, pursuant to Rule 3:22-12(a)(3).

A-5060-18T4

2C:2-6 (counts two, three and eight); third-degree theft by deception, pursuant to N.J.S.A. 2C:20-4, 2C:20-2(b)(2)(a) and 2C:2-6 (count four); second-degree financial facilitation, possession of property derived from criminal activity, pursuant to N.J.S.A. 2C:21-25(a), 2C:2-6 (count five); second-degree identity theft, pursuant to N.J.S.A. 2C:21-17(a)(1), 2C:21-17(c)(3) and 2C:2-6 (count seven); third-degree financial facilitation, possession of property derived from criminal activity, pursuant to N.J.S.A. 2C:21-25(a), 2C:2-6 (count nine); first-degree financial facilitation, possession of property derived from criminal activity, pursuant to N.J.S.A. 2C:21-25(a), 2C:2-6 (count ten); first-degree financial facilitation, engaging in transactions for the purpose of disguising the nature of the transaction, pursuant to N.J.S.A. 2C:21-25(b)(1), 2C:21-25(b)(2)(a) and 2C:2-6 (count eleven).

On March 27, 2012, an Atlantic County grand jury returned Indictment No. 12-03-0067, charging defendant with the following offenses: second-degree theft by deception, pursuant to N.J.S.A. 2C:20-4, 2C:20-2(b)(1)(a) and 2C:2-6 (count one); third-degree uttering a forged instrument, pursuant to N.J.S.A. 2C:21-1(a)(3) (counts two through ten).

On May 24, 2013, defendant filed a motion to suppress evidence seized pursuant to the warrantless search of his apartment and a motion to suppress his

recorded statement. At the motion hearing, Judge Mark J. Fleming heard testimony from defendant and five detectives.

We derive the following facts from the suppression motion record. In July 2010, the Division of Criminal Justice and the New Jersey Department of Labor (DOL) initiated an investigation after receiving reports that more than seventy claimants filed false claims for unemployment insurance based on fictitious previous employment. The investigation revealed that defendant filed approximately 100 fraudulent claims for unemployment insurance benefits between August 27, 2006 and November 9, 2010, resulting in the theft of $2,400,000 from the State of New Jersey. To file these fraudulent claims, defendant obtained personal identifying information of individuals from his father, Terry Dilligard, who obtained access to the information through his job registering voters in Florida.

On November 9, 2010, after the initial investigation, officers obtained and executed an arrest warrant for defendant. The officers arrived at one of two locations in the arrest warrant believed to be defendant's home, knocked on the door, and announced their presence. Meanwhile, one of the officers on the scene, Detective Patrick Sole, received a call from a detective at the Whippany Office revealing that defendant's girlfriend, Monique Valentine, was already in

4

police custody and receiving text messages from defendant, telling her that he heard police at his door and that he wanted to send Valentine money. Later, defendant disclosed to Valentine through text messages that the money was in a spare bedroom in his apartment and requested that Valentine post his bail because he was about to turn himself in to the police.

After receiving this information, Detective Mario Estrada stated through the door, "Terry we know you are in there, open the door." Defendant opened the door and was placed under arrest in the hallway adjacent to the living room area of his apartment. In plain view in the living room were an HP Laptop, a MacBook Pro computer, several iPhones, a Nokia cell phone, a Samsung T-Mobile cell phone, and a black box containing numerous VISA and Mastercard debit cards.

The officers walked defendant to a table in between the kitchen and living room. Detective Estrada then asked defendant if any weapons or people were present in the apartment and defendant responded no. Detective Estrada next asked defendant for his consent to search his apartment for evidence, without revealing the purpose of their investigation. He subsequently read to defendant a permission to search form that permitted officers to seize any evidence they considered pertinent to the investigation. The form stated that defendant had

the right to refuse permission of the search. Defendant signed the form. Defendant also signed a Miranda[2] rights form, confirming he voluntarily acknowledged and waived his rights. After signing both forms, defendant was informed that he was being arrested for unemployment fraud. During the search, the police seized items believed to be proceeds of the alleged fraud.

The officers then transported defendant to police headquarters in Whippany. Defendant was read a Miranda rights form for a second time and again waived his rights by signing the form. He then learned that Valentine was in custody. Later, defendant was brought into an interview room, where he again was read a Miranda rights form and again waived his rights by signing the form. He then made a statement to police regarding his involvement in the alleged fraud. Defendant testified he did not sign the permission to search form or the Miranda form, and claimed the signatures on the forms were not his signatures.

On September 4, 2014, Judge Fleming, in a thirty-two-page statement of reasons, denied defendant's motion to suppress evidence as to weapons but granted the motion as to evidence found outside of defendant's consent to search for weapons. He also denied the motion to suppress defendant's statement. The judge found the testifying officers credible, explaining they testified in a

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

A-5060-18T4

forthright and candid manner. The judge stated the minor inconsistencies in their testimonies "only made them more credible" because it showed their testimonies were not rehearsed. In contrast, the judge found defendant's testimony "to be much less credible" consisting of,

> primarily . . . blanket denials of the State's version of events. Numerous inconsistencies in [defendant's] testimony were revealed on cross-examination and defendant's overall demeanor throughout his testimony was one of hostility and apparent belief that he was a victim who had been wronged by the State. His strident refusal to admit that he had signed forms that was contradicted by the State's witnesses was particularly troubling. Overall, the court finds defendant's testimony to be not worthy of belief.

Turning to the search of the premises without a warrant, the judge reasoned defendant's subjective perception that his consent was not given voluntarily did not "vitiate the consent" of defendant signing the consent to search form shown by defendant's signature and Detective Estrada's credible testimony. The judge found that all of the factors pursuant to Schneckloth[3] pointed to defendant providing a knowing and voluntarily consent to search the premises for only weapons, rather than for an investigation of unemployment fraud.

---

[3] Schneckloth v. Bustamonte, 412 U.S. 218 (1973).

A-5060-18T4

The judge explained that the present set of facts resembled <u>State v. Leslie</u>, 338 N.J. Super. 269 (App. Div. 2001), and concluded that because Detective Estrada initially asked if the police could search for weapons, defendant reasonably believed that signing the consent form permitted law enforcement officers to only search the premises for weapons, rather than a general search for evidence of unemployment fraud of his apartment.

The judge narrowed the areas of the apartment the officers were permitted to search based on where a weapon could be found and suppressed evidence where a weapon could not reasonably be located:

> [T]he detectives lawfully seized all computers and cell phones, as well as numerous debit and credit cards found inside a box in the defendant's living room and the currency found inside a bag in a closet in defendant's bedroom. Further, detectives were permitted to search through the large red expanding folder found inside defendant's bedroom. [H]owever, they were not entitled to search through smaller envelopes or other areas of the apartment where a weapon could not reasonably be located.

The judge found that the plain view exception applied to the HP laptop, several iPhones, a Nokia cell phone, and a Samsung T-Mobile cell phone.

Turning to whether defendant voluntarily waived his <u>Miranda</u> rights, the judge noted that it was unclear whether defendant drew certain conclusions regarding how his cooperation would affect Valentine. However, the judge

ruled that defendant's confession was not coerced and should not be suppressed. Additionally, the judge noted police appeared courteous during the interrogation and "defendant was calm and willing to answer their questions."

All charges against defendant were resolved when the Atlantic County charges were consolidated with the Mercer County charges, and defendant pled guilty to three of the charges, pursuant to a plea agreement. On April 13, 2015, defendant appeared before Judge Lydon and pled guilty to counts three and eleven, under Indictment No. 12-03-0036, and to count one, under Indictment No. 12-03-0067. Defendant admitted to creating an unemployment benefit claims scheme for numerous ineligible individuals. He also admitted to creating and controlling multiple Metabank banking accounts to receive direct deposits from the State of New Jersey in other people's names as part of the scheme. Defendant admitted that he gambled and won over $75,000 at Harrah's Casino Resort, took photographs of the checks, deposited the checks and then used the photographed copies to receive additional proceeds in excess of $75,000.

Consistent with the plea agreement, on June 26, 2015, Judge Lydon sentenced defendant on counts three and eleven of Indictment No. 12-03-0036 to two consecutive nine-year terms of imprisonment. On Indictment No. 12-03-0067, he sentenced defendant to a concurrent seven-year prison term.

9

On March 9, 2016, we heard oral argument pursuant to Rule 2:9-11 on defendant's appeal of his sentence. Defendant argued his sentence was excessive because his two nine-year prison terms were consecutive. In a written order, we affirmed the sentence imposed, ruling that the sentence was "not manifestly excessive or duly punitive and does not constitute an abuse of discretion." State v. Dilligard, II, No. A-0284-15 (App. Div. March 9, 2016).

Pursuant to Judge Lydon's June 11, 2019 order, defendant filed this appeal and presents the following arguments:

POINT I

AS THE ENTRY INTO MR. DILLIGARD'S HOME WAS UNLAWFUL, THE TRIAL COURT ERRED WHEN IT DENIED HIS MOTION TO SUPPRESS EVIDENCE SEIZED THEREOF AND FURTHER THE TRIAL COURT SHOULD HAVE SUPPRESSED THOSE PORTIONS OF MR. DILLIGARD'S ANSWERS THAT WERE ELICITED DURING THE MIRANDA STATEMENT THAT WERE BASED ON EVIDENCE UNLAWFULLY SEIZED. (PARTLY RAISED BELOW)

POINT II

TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO ARGUE THAT THE INITIAL WARRANTLESS ENTRY INTO MR. DILLIGARD'S HOME WAS UNLAWFUL. (RAISED BELOW)

II.

Defendant argues for the first time on appeal that the officer's initial entry into his home was unlawful. Specifically, defendant asserts the police entered his home without his consent, arrested him, transferred him to his kitchen, and then asked him to consent to a search of the remainder of his home.

Because this argument is raised for the first time on appeal, the "plain error" standard applies and we review the record to determine whether the alleged error is "clearly capable of producing an unjust result." R. 2:10-2.

We apply a highly deferential standard of review to a trial judge's determination on a motion to suppress. State v. Gonzales, 227 N.J. 77, 101 (2016). We will uphold "the motion judge's factual findings so long as sufficient credible evidence in the record supports those findings. Those factual findings are entitled to deference because the motion judge . . . has the 'opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" Ibid. (citations omitted) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)).

"[U]nder . . . the Fourth Amendment to the United States Constitution and Article I, Paragraph 7 of our State Constitution, searches and seizures conducted without warrants issued upon probable cause are presumptively unreasonable

and therefore invalid." State v. Elders, 192 N.J. 224, 246 (2007). Searches and seizures conducted without a warrant, "particularly in a home, are presumptively unreasonable." State v. Edmonds, 211 N.J. 117, 129 (2012) (quoting State v. Bolte, 115 N.J. 579, 585 (1989)). Indeed, entry into the home is the "chief evil against which the wording of the Fourth Amendment is directed." State v. Lamb, 218 N.J. 300, 314 (2014) (citation and internal quotation marks omitted). Therefore, "our jurisprudence expresses a clear preference for police officers to secure a warrant before entering and searching a home." State v. Brown, 216 N.J. 508, 527 (2014). Where a search of a home is challenged, the State has the burden of proving by a preponderance of the evidence the search is "justified by one of the 'well-delineated exceptions' to the warrant requirement." State v. Shaw, 213 N.J. 398, 409 (2012) (quoting State v. Frankel, 179 N.J. 586, 598 (2004)).

Although "an arrest warrant generally furnishes no authority to the police to intrude on the privacy of a home or to engage in a search therein," State v. Miller, 342 N.J. Super. 474, 490 (App Div. 2001), "[a]n arrest warrant 'implicitly carries with it the limited authority to enter a dwelling' where the suspect lives when there is reason to believe the suspect is inside." State v. Brown, 205 N.J. 133, 145 (2011) (quoting Payton v. New York, 445 U.S. 573, 603 (1980)).

A-5060-18T4

Law enforcement does not have an autonomous right to execute an arrest warrant in a dwelling. In <u>Miller</u>, we held that "in the absence of consent or exigency, an arrest warrant is not lawfully executed in a dwelling unless the officers executing the warrant have objectively reasonable bases for believing that the person named in the warrant both resides in the dwelling and is within the dwelling at the time." <u>Miller</u>, 342 N.J. Super. at 479.

Defendant's argument regarding inadequate consent into his home lacks merit because it conflicts with the well-settled principle that police may enter a home to execute an arrest warrant. The officers went to the apartment to execute an open arrest warrant, with a reasonable belief defendant lived at the apartment; upon arrival, the officers knew defendant was located inside because he was simultaneously texting Valentine information about police at his door. The judge found that the police arrested defendant in a hallway adjacent to the living room area of his apartment, after he opened the door for them. The judge made these findings based on the credibility of the testifying officers and finding defendant's testimony lacked credibility. We must defer to the trial judge's credibility and factual findings. We therefore find that the officers exercised their limited authority by arresting defendant in his home and transferring him to a table so he could sit down.

Having found police lawfully entered defendant's home under their limited authority to execute an arrest warrant, we find that the judge correctly limited the evidence seized during the lawful search to that embodied by a weapons search and that found in light of the plain view exception. We affirm the September 4, 2014 order under review substantially for the reasons set forth in Judge Fleming's well-reasoned statement of reasons.

"[A] confession or incriminating statement obtained during a custodial interrogation may not be admitted in evidence unless a defendant has been advised of his or her constitutional rights." State v. Hubbard, 222 N.J. 249, 265 (2015). Those rights, however, may be waived so long as the waiver is "voluntary, knowing and intelligent." State v. Hreha, 217 N.J. 368, 382 (2014).

To determine whether a statement was made voluntarily, a court must assess the totality of the circumstances surrounding the giving of the statement. State v. Roach, 146 N.J. 208, 227, cert. denied, 519 U.S. 1021, 117 (1996). "Relevant factors include the defendant's age, education, intelligence, advice concerning his [or her] constitutional rights, length of detention, and the nature of the questioning — specifically, whether the questioning was repeated and prolonged and whether it involved physical punishment or mental exhaustion." State v. Bey, 112 N.J. 123, 135 (1988).

Defendant argues that police based their questions on information obtained during the illegal search of his apartment and therefore his statement should be suppressed. The judge found defendant not credible and pointed to defendant's strident denial of signing any waiver or consent to search form despite numerous credible witnesses testifying that he did sign the forms. Additionally, defendant signed not only a <u>Miranda</u> waiver form at his apartment but twice more at the police station. Only thereafter did he make a statement to police. The record supports the judge's conclusion that defendant's statements were voluntary and not coerced and that his statement should not be suppressed.

Lastly, to the extent that defendant now alleges his trial court counsel was ineffective for "failing to argue that the initial warrantless entry into [defendant's] home was unlawful," we note that ineffective assistance of counsel claims are best suited for PCR proceedings because they often involve matters for which there is not a complete record of counsel's reasons for the trial strategy employed in a particular case. <u>State v. Rambo</u>, 401 N.J. Super. 506, 525 (App. Div. 2008) (citing <u>State v. Preciose</u>, 129 N.J. 451, 460 (1992)). Defendant may assert his ineffective assistance claim if he chooses to refile his PCR petition within ninety days of the date of our decision, as permitted by Judge Lydon's June 11, 2019 order.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

16