July 10, 2013.

ORDER

The United States Court of Appeals for the Third Circuit having
certified to the Supreme Court the following question of law
pursuant to *Rule* 2:12A:

70 A.3d 592

STATE OF NEW JERSEY, PLAINTIFF–APPELLANT,
v. K.W., DEFENDANT–RESPONDENT.

Argued April 17, 2013—Decided July 11, 2013.

500

*Steven A. Yomtov,* Deputy Attorney General, argued the cause for appellant *(Jeffrey S. Chiesa,* Attorney General of New Jersey, attorney).

*Diane M. Toscano,* Assistant Deputy Public Defender, argued the cause for respondent *(Joseph E. Krakora,* Public Defender, attorney).

PER CURIAM.

In this appeal, we must decide whether a telephone conversation intercepted by law enforcement officials in violation of the New Jersey Wiretapping and Electronic Surveillance Control Act (Wiretap Act or Act), *N.J.S.A.* 2A:156A–1 to –34, must be suppressed. *N.J.S.A.* 2A:156A–4(c) requires that prior approval must be given by the Attorney General, the County Prosecutor, or one of their designees, before a law enforcement officer can authorize the interception of a telephone conversation between a party consenting to the intercept and a non-consenting party.

In this case, without first obtaining the required approval, an assistant prosecutor and detective proceeded with a consensual intercept of a conversation between a cooperating child-victim, who allegedly had been sexually assaulted by her father, and the defendant-father. Relying on our opinion in *State v. Worthy,* 141 *N.J.* 368, 661 *A.*2d 1244 (1995), the trial court rejected the State's

invitation to read into the Wiretap Act a good-faith or other exception and suppressed the recorded conversation secured in violation of *N.J.S.A.* 2A:156A–4(c). The Appellate Division affirmed.

A straightforward application of *Worthy* commands that we suppress the conversation recorded in violation of the Wiretap Act. In *Worthy, supra*—a case also involving an officer's failure to obtain the requisite prosecutorial approval before conducting a consensual intercept—we concluded that the Wiretap Act demands strict adherence to its protocols. 141 *N.J.* at 371, 384, 661 *A.*2d 1244. We found that non-compliance with the prior-approval requirement will result in suppression under the Act, and that the Act does not allow for exceptions, such as for good faith or inevitable discovery. *Id.* at 385, 389, 661 *A.*2d 1244. Accordingly, we affirm the Appellate Division and suppress the intercepted conversation in violation of the Act.

I.

A.

Defendant K.W. was charged in a thirty-two-count indictment with twelve counts of first-degree aggravated-sexual-assault, *N.J.S.A.* 2C:14–2(a)(1); sixteen counts of second-degree endangering the welfare of a child, *N.J.S.A.* 2C:24–4(a); two counts of second-degree sexual assault, *N.J.S.A.* 2C:14–2(b); one count of third-degree aggravated-criminal-sexual contact, *N.J.S.A.* 2C:14–3(a)(2)(a); and one count of third-degree terroristic threats, *N.J.S.A.* 2C:12–3(a). All of the charges relate to K.W.'s alleged victimization of his minor daughter, M.W., over a two-year period.

The events relevant to this appeal began on September 18, 2009, when thirteen-year-old M.W. reported to the local police that her father, K.W., had repeatedly sexually assaulted her. The matter was referred to the Essex County Prosecutor's Office where Detective Mario Suarez of the Special Victims Unit was assigned to conduct the investigation.

The Division of Youth and Family Services (DYFS) was also contacted and planned to remove M.W.'s brother the next day from K.W.'s home where he was spending the weekend. DYFS, however, deferred action to allow the Essex County Prosecutor's Office to proceed with its investigation and to avoid alerting K.W. to the sexual-assault allegations.

On the morning of September 19, 2009, Detective Suarez met with M.W. and her mother. Later that morning, M.W. gave a tape-recorded statement to Detective Suarez, detailing her father's sexual assaults against her, which began when she was eleven years old. At some point, the "on-call" Assistant Prosecutor for the Child Abuse Unit of the Essex County Prosecutor's Office (Assistant Prosecutor) became involved in the investigation. That same day, the Assistant Prosecutor reviewed the facts of the case by telephone with a senior assistant prosecutor, the Director of the Child Abuse Unit (Director). The Assistant Prosecutor proposed that a consensual telephone intercept be conducted, with M.W. engaging her father in conversation. The Director agreed that "would be the best course of action."

After that conversation concluded, due to an apparent misunderstanding, the Assistant Prosecutor and the Director proceeded on two different tracks, neither one knowing what the other was doing. Believing she had authorization to conduct the intercept, the Assistant Prosecutor gave permission to Detective Suarez to proceed with the wiretap.

Detective Suarez completed an "application/authorization data" form for a third-party consensual intercept under *N.J.S.A.* 2A:156A–4(b) on which he noted that authorization for the intercept had been granted, and M.W. and her mother signed a "certification of consent" to the intercept. However, the official "consensual interception authorization" form had every field completed—requesting officer, consenting party, unit authorization, target, crime, type of intercept, authorization approval—except one. The form contained no "authorized signature" or name at the bottom of the form. The intercept went forward. M.W. engaged

her father in a conversation during which he made a number of incriminating remarks.

The Director was unaware that the Assistant Prosecutor believed that he—the Director—had signaled approval for the wiretap. The Director knew he was not designated by Essex County Prosecutor Paula Dow with the authority to give permission for an intercept. Unaware that the intercept was proceeding apace, the Director sought authorization from Chief Assistant Prosecutor Robert Laurino, one of Prosecutor Dow's statutory designees. Laurino approved of the use of a consensual telephone intercept. The Director then contacted the Assistant Prosecutor to advise her of Laurino's approval. At that point, the Assistant Prosecutor informed the Director that the intercept had concluded. Approximately ten minutes had elapsed since the Director's earlier conversation with the Assistant Prosecutor.

On the evening of September 19, 2009, a Superior Court judge issued a warrant to search defendant's Newark apartment for evidence corroborating M.W.'s allegations of aggravated-sexual-assault and related crimes. The probable-cause basis for the issuance of the warrant was an affidavit submitted by Detective Suarez. That affidavit detailed M.W.'s recorded statement describing the offenses committed against her; the affidavit did not contain any mention of the consensual intercept or the contents of the intercepted conversation. Nor did the warrant refer to a consensual intercept.

That evening, officers of the Essex County Prosecutor's Office and Newark Police Department executed the warrant and seized items from K.W.'s apartment. That same evening, K.W. was arrested.

### B.

K.W. claimed that the consensual intercept without prior prosecutorial consent violated *N.J.S.A.* 2A:156A–4(c) and, therefore, he moved to suppress all evidence secured as a result of the "illegally intercepted wire, electronic, or oral communication pursuant to

*N.J.S.A.* 2A:156A–21." At the hearing on the motion, the Assistant Prosecutor conceded that "[w]e did not have the appropriate party's authorization prior to initiating the consensual intercept." She explained that she was not familiar with the requirements under the Wiretap Act and believed that she had the "necessary approval" for the consensual intercept from the Director.

Relying on *Worthy,* the trial court "strictly interpreted" the mandate of the Wiretap Act, finding no good-faith exception for not obtaining the requisite prosecutorial consent before undertaking a consensual intercept. The court specifically determined that the appropriately designated assistant prosecutor did not approve the wiretap until "[a]fter the intercept began." Accordingly, the court suppressed the tape-recorded conversation between M.W. and K.W. The court did not suppress the evidence seized from K.W.'s apartment because the issuance of the search warrant was not in any way based on the illicit intercept.

## C.

The Appellate Division granted the State's motion for leave to appeal. The appellate panel concluded that the State failed to procure the appropriate prosecutorial approval before conducting the intercept and therefore affirmed the trial court's suppression of the recorded conversation between M.W. and K.W. The panel rejected the State's arguments that suppression was not warranted because (1) "the Assistant Prosecutor reasonably believed that she had the appropriate approval for the intercept" and therefore made "an honest mistake"; (2) "the error was 'ministerial and inadvertent'"; (3) "any statutory violation was de minimus"; (4) DYFS's involvement set in motion a time-of-the-essence response; (5) the Director "had received the designee's approval contemporaneously with the intercept"; and (6) the "intercept [was] admissible under the inevitable discovery doctrine."

Applying this Court's decision in *Worthy, supra,* the panel observed that "an investigative or law enforcement officer may intercept a consensual telephone communication, but only if he or

she obtains prior prosecutorial approval *before* conducting it,"
citing 141 *N.J.* at 379, 661 *A.2d* 1244. In upholding the trial
court's suppression order, the panel emphasized that "[f]ailure to
strictly comply with the Wiretap Act warrants suppression of the
unlawfully obtained communication," citing *N.J.S.A.* 2A:156A–21
(a).

This Court granted the State's motion for leave to appeal.

## II.

The State advances many of the same arguments presented to
the Appellate Division in urging that we reverse the order sup-
pressing the intercepted conversation between M.W. and K.W.
The State faults the Appellate Division for "blindly" following
*Worthy* and for not paying heed to the 1999 amendment to
*N.J.S.A.* 2A:156A–4(c), which—it claims—"significantly relaxed
when, and in what circumstances, a consensual interception is
permitted." The State contends that the removal of the require-
ment that the designated prosecutor find "reasonable suspicion"
before authorizing a consensual intercept "strongly suggests that
approval of consensual interceptions is now essentially an adminis-
trative, procedural function of the prosecutor." According to the
State, the amendment signals that "the Legislature intended that
*N.J.S.A.* 2A:156A–4(c) should not be subjected to the same strict
compliance as with traditional, nonconsensual interceptions."

From that vantage point, the State posits several reasons for
not suppressing the evidence. First, "there was substantial com-
pliance" because "prosecutorial review" was sought and because
"the detective and the assistant prosecutor believed that they had
the necessary authorization to conduct the consensual intercep-
tion." Second, the intercept would inevitably have occurred be-
cause the Assistant Prosecutor's conversation with the Director
"put in motion the correct protocol for obtaining valid authoriza-
tion from the proper designee"—an authorization that would have
resulted in a legitimate intercept. Third, "[b]ecause the requisite
authorization had been obtained contemporaneously with the in-

terception, and was acquired wholly independent of any statutory violation under the Wiretap Act," the independent-source doctrine is a basis for not suppressing K.W.'s incriminating conversation with his daughter.

In contrast, K.W. insists that the 1999 amendment eliminating the "reasonable suspicion" standard for prosecutorial approval of a consensual intercept did not alter the requirement that the appropriate statutory designee give authorization *before* the undertaking of the intercept. K.W. also points out that the statutory designee did not give his approval until after the intercept was concluded. K.W. basically relies on the Appellate Division's rejection of the State's good-faith and inevitable-discovery arguments. He also submits that the independent-source doctrine is not an exception to the rigid requirements of the Wiretap Act.

## III.

We begin with our standard of review. We defer to the trial court's factual findings "so long as those findings are supported by sufficient credible evidence in the record." *State v. Elders*, 192 *N.J.* 224, 243, 927 *A.*2d 1250 (2007) (internal quotation marks and citations omitted). On the other hand, we do not defer to the legal conclusions reached by either the trial court or Appellate Division because our review of the law is de novo. *Manalapan Realty, L.P. v. Manalapan Twp. Comm.*, 140 *N.J.* 366, 378, 658 *A.*2d 1230 (1995) (noting that "interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference").

## IV.

The heart of this case concerns the interpretation of the consensual-intercept provision of the Wiretap Act. *N.J.S.A.* 2A:156A–4(c) provides that it is not unlawful for

[a]ny person acting at the direction of an investigative or law enforcement officer to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior

consent to such interception; *provided, however, that no such interception shall be made without the prior approval of the Attorney General or his designee or a county prosecutor or his designee*[.]

[Emphasis added.]

■ Before undertaking a discussion of this statute, we first address the findings of fact made by the trial court. At the outset, we hold that sufficient credible evidence supports the trial court's determination that Chief Assistant Prosecutor Laurino—the County Prosecutor's designee to authorize a consensual intercept—did not approve the wiretap until after the intercept began. At the suppression hearing, the Assistant Prosecutor, who had firsthand information about the sequence of events, admitted that her office "did not have the appropriate party's authorization prior to initiating the consensual intercept." Accordingly, we have no cause to disturb the trial court's factual finding.

In light of that finding, there is no question that the command of *N.J.S.A.* 2A:156A–4(c) has been violated. The preeminent issue before us is whether the violation demands suppression of the conversation that was intercepted contrary to the dictates of the consensual-intercept statute. We explored this issue in extensive detail in *Worthy, supra,* 141 *N.J.* 368, 661 *A.*2d 1244, and therefore *Worthy* must be our starting point.

In *Worthy, supra,* a prosecutor's investigator directed an informant to record telephone calls with the defendant who, according to the informant, was involved in a drug-distribution network. *Id.* at 372–73, 661 *A.*2d 1244. The investigator initiated a scheme in which the informant would offer to sell significant amounts of marijuana to the defendant. *Ibid.* The investigator did not seek prior approval from the county prosecutor, or from the Attorney General or his designee for the consensual intercept of the telephone conversations.[1] *Id.* at 373, 661 *A.*2d 1244. The investigator

---

[1] The pre–1999 version of *N.J.S.A.* 2A:156A–4(c) is different in two respects from the current version. First, the pre–1999 statute did not empower a county prosecutor to authorize a designee to approve a consensual intercept. *See N.J.S.A.* 2A:156A–4(c), *amended by, L.* 1999, *c.* 151, § 3. Second, the earlier

explained that he did not seek prior authorization because he did not believe he needed it. *Ibid.* Before the investigator applied for "authorization for a consensual interception" from the county prosecutor, the informant recorded three calls during which the defendant incriminated himself. *Id.* at 373–74, 661 *A.*2d 1244. After the county prosecutor approved the investigator's intercept application, the informant recorded further incriminating telephone conversations. *Id.* at 375, 661 *A.*2d 1244. Later, the defendant was arrested and charged with various drug offenses. *Id.* at 375–76, 661 *A.*2d 1244. The trial court suppressed all of the intercepts prior to the approval and any derivative evidence from those intercepts. *Id.* at 376, 661 *A.*2d 1244. The Appellate Division upheld the suppression order, *ibid.*, and we affirmed, *id.* at 392, 661 *A.*2d 1244.

In *Worthy*, we declared that "[t]he powerful privacy concerns generated by the spectre of government-directed wiretapping exist even with respect to the consensual interception of such communications," and that "[i]n imposing a requirement of prior prosecutorial approval before the police may direct a 'consensual' wiretap, the Legislature sought to safeguard personal privacy." *Id.* at 379, 661 *A.*2d 1244. We found that the legislative concern "for the privacy interests of individuals" affronted by intercepted telephone communications "demands the strict interpretation and application of the Wiretap Control Act." *Id.* at 379–80, 661 *A.*2d 1244 (citations omitted). *Worthy's* discussion of the purpose behind and meaning of the consensual-intercept provision of the Wiretap Act must inform the approach we take in the present case.

In enacting *N.J.S.A.* 2A:156A–4(c), "the Legislature determined not to leave police officers to their unfettered discretion, fearing that too much investigative latitude might lead to abuses of

statute—unlike the current one—required that, before approving a consensual intercept, a designated official "determine[ ] that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception." *Ibid.*

privacy." *Id.* at 379, 661 *A.*2d 1244. Indeed, the history of *N.J.S.A.* 2A:156A–4(c) reveals that "the Legislature viewed the requirement of supervisory approval as an indispensable protection for the privacy interests implicated even in consensual telephone wiretaps." *Id.* at 382, 661 *A.*2d 1244. At its inception, "[t]he 1968 New Jersey Wiretap Control Act did not prohibit or regulate consensual interceptions." *Ibid.* (citing *L.* 1968, *c.* 409, § 4(b)). However, after six years of experience with the Act, the Legislature decided to add a provision "to provide for prosecutorial oversight and prior approval of consensual interceptions." *Ibid.* (citing *L.* 1975, *c.* 131, § 4(c); *N.J.S.A.* 2A:156A–4 (c)).

In *Worthy,* we also reviewed the suppression remedy set forth in the Wiretap Act, which provides, in pertinent part, that any " 'aggrieved person ... may move to suppress the contents of any intercepted wire, electronic or oral communication, or evidence derived therefrom, on the grounds that[ ] [t]he communication was unlawfully intercepted.' " *Id.* at 380–81, 661 *A.*2d 1244 (quoting *N.J.S.A.* 2A:156A–21). We concluded in *Worthy* that, in light of the privacy interests protected by the Wiretap Act, our case law strictly interpreting the Act, "the legislative intent to strengthen the suppression remedy, and the plain meaning of the statutory language," "the exclusionary remedy" must "be strictly applied." *Id.* at 384, 661 *A.*2d 1244. In reaching this conclusion, we made several significant points. The suppression remedy is "not conditioned on a predicate finding of an intentional or deliberate violation or evasion of the Act's requirements." *Id.* at 385, 661 *A.*2d 1244. *N.J.S.A.* 2A:156A–21(a) "contains no good-faith exception," and we therefore do not look to the "motives of the law enforcement officers" who fail to comply with the dictates of the Wiretap Act. *Ibid.* (internal quotation marks and citation omitted). In that regard, "[a]pplication of the exclusionary rule encourages respect for protected rights and care in following prescribed procedures among law enforcement officials and departments." *Ibid.*

In *Worthy, supra,* we affirmed the suppression of derivative evidence from the "unlawful interceptions," an issue that is not present in the case before us. *Id.* at 387–88, 661 *A.*2d 1244. In that context, we explicitly rejected the State's arguments that we engraft onto the suppression remedy of the Wiretap Act the inevitable-discovery exception to the exclusionary rule. *Id.* at 389, 661 *A.*2d 1244. That holding seemingly encompassed a rejection of the independent-source exception as well.[2] *Id.* at 389–90, 661 *A.*2d 1244. We declined to impute to the Legislature an "intent to undermine [the Wiretap Act's] exclusionary rule" with an exception, such as inevitable discovery. *Id.* at 389, 661 *A.*2d 1244. We also declined to impose a judicial exception to a well-crafted legislative remedy. *Ibid.*

*Worthy* compels the rejection of almost all of the arguments raised in this case by the State, which urges this Court not to apply the Wiretap Act's suppression remedy. The only remaining argument is whether the 1999 amendment to *N.J.S.A.* 2A:156A-4(c) should alter the strict application of the suppression remedy here. We therefore turn to the changes made to *N.J.S.A.* 2A:156A-4(c) since *Worthy.*

### V.

The version of *N.J.S.A.* 2A:156A-4(c) that was in effect at the time of our decision in *Worthy* provided:

Any person acting at the direction of an investigative or law enforcement officer to intercept a wire, electronic or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception; provided, however, that no such interception shall be made *unless the* Attorney General or his designee or a county prosecutor *within*

---

[2] In disapproving of the application of the inevitable-discovery doctrine in *Worthy,* we found that it made no difference whether the defendant "would have been apprehended for the drug offenses he actually committed through investigative efforts that would have occurred inevitably and *independently* of the investigation involving the unlawful wiretap interception." *Id.* at 389, 661 *A.*2d 1244 (emphasis added).

*his authority determines that there exists a reasonable suspicion that evidence of criminal conduct will be derived from such interception*[.]

[*L.* 1993, *c.* 29, § 3 (emphasis added).]

The 1999 amendment removed the emphasized portion of the statute—the reasonable-suspicion requirement. *L.* 1999, *c.* 151, § 3. However, the amendment added the following emphasized language to the statute: "that no such interception shall be made *without the prior approval of* the Attorney General or his designee *or a county prosecutor or his designee." Ibid.* (emphasis added). The amendment included the county prosecutor's designee as an official authorized to approve a consensual intercept. *Ibid.* But more significant to the case before us, the amendment reinforced in clear and unambiguous language that a consensual interception cannot proceed without "prior approval." *Ibid.*

The State contends that the removal of the reasonable-suspicion requirement in section 4(c) suggests that the Legislature intended to loosen the dictate of strict compliance with the prior-prosecutorial-approval requirement for consensual intercepts. However, this argument ignores the plain and simple fact that the addition of the "prior approval" language strengthens rather than diminishes the Legislature's expectation of the proper prosecutorial oversight before the directing of a consensual intercept. We must be guided by our standard canons of statutory construction. "When the Legislature's chosen words lead to one clear and unambiguous result, the interpretative process comes to a close, without the need to consider extrinsic aids." *State v. Shelley,* 205 *N.J.* 320, 323, 15 *A.*3d 818 (2011); *see also N.J.S.A.* 1:1–1 ("[W]ords and phrases shall be read and construed with their context, and shall ... be given their generally accepted meaning[.]"). In any event, the legislative history does not shed any particular insight on the impetus for the amendment. *See* Assembly Judiciary Committee, *Statement to Assembly Bill No. 3014,* at 10–12 (Mar. 18, 1999).

■ In short, the current language of *N.J.S.A.* 2A:156A–4(c), based on the 1999 amendment, does not undercut the holding and reasoning of *Worthy, supra,* or its meticulous recitation of the legislative purpose in demanding strict adherence to the "require-

ment of prior prosecutorial approval before the police may direct a 'consensual' wiretap" and in crafting a suppression remedy undiluted by judicial exceptions. 141 *N.J.* at 379, 661 *A.2d* 1244.

## VI.

A straightforward application of *Worthy* compels the affirmance of the trial court's suppression of the consensual intercept in this case. Although we do not question that the Assistant Prosecutor acted in good faith and under the mistaken belief that she had permission to go forward with the consensual intercept, the undeniable truth is that neither the County Prosecutor nor her designee authorized the consensual intercept before it was undertaken, as required by *N.J.S.A.* 2A:156A–4(c).

## VII.

For the reasons expressed, we affirm the judgment of the Appellate Division upholding the trial court's suppression of the intercepted and recorded conversation between M.W. and K.W. We remand to the trial court for proceedings consistent with this opinion.

*For affirmance and remandment*—Chief Justice RABNER and Justices LaVECCHIA, ALBIN, HOENS, PATTERSON and Judges RODRÍGUEZ and CUFF (temporarily assigned)—7.

*Opposed*—None.