**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1501-25

STATE OF NEW JERSEY,

     Plaintiff-Appellant,

v.

TYJON A. WILLIAMS,

     Defendant-Respondent.

_____

Argued April 27, 2026 – Decided May 7, 2026

Before Judges Natali and Bergman.

On appeal from an interlocutory order of the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 21-10-0974.

David M. Liston, Assistant Prosecutor, argued the cause for appellant (Linda Estremera, Middlesex County Prosecutor, attorney; David M. Liston, of counsel and on the briefs).

Nadine Kronis, Assistant Deputy Public Defender, argued the cause for respondent (Jennifer N. Sellitti, Public Defender, attorney; Nadine Kronis, of counsel and on the brief).

PER CURIAM

On leave granted, this matter returns to us following our remand to the Law Division in which we reversed and vacated the court's order suppressing evidence consisting of an illegal firearm and a controlled dangerous substance (CDS), seized by law enforcement pursuant to a search warrant executed on the motor vehicle and residence of defendant Tyjon Williams. On remand, defendant filed a second motion to suppress which the court granted after concluding the warrant's no-knock provision was factually insufficient, and the warrant consequentially legally defective. The State argues the court erred because the evidence was seized "pursuant to a lawful, judicially authorized no-knock search warrant." We agree and accordingly reverse the court's suppression order.

I.

We restate the relevant facts as set forth in our prior opinion, supplemented by additional facts from the record and the subsequent procedural history. State v. Williams, No. A-3380-23 (App. Div. Mar. 10, 2025) (slip op. at 1-7). In September 2020, members of the Middlesex County Prosecutor's Office Narcotics Task Force (Task Force) met with a "credible confidential informant" (CI) regarding cocaine and heroin traffickers operating in Middlesex

County. The informant had previously provided reliable information to law enforcement and identified defendant as an individual using a specific address in New Brunswick and driving a beige Mercedes Benz to facilitate drug distribution. The informant claimed to have obtained this knowledge through personal conversations and observations of defendant.

During September 2020, the head Detective of the Task Force executed an affidavit in support of an application for three search warrants, which disclosed that for three consecutive months after receiving informant's tip, the police conducted physical and electronic surveillance of defendant at his residence. The affiant also averred that "independent observations and this investigation . . . corroborated [the] CI's information."

The affiant stated he conducted a criminal history inquiry of defendant and detailed his criminal history. He provided that Williams was arrested and convicted on nine individual instances spanning from 1996 to 2018. Defendant had documented criminal convictions for: possession with intent to distribute marijuana in 1996; unlawful possession of a firearm in February 1998; possession of under fifty grams of marijuana in April 1998; failure to make lawful disposition in June 1999; possession of under fifty grams of marijuana in October 1999; possession of under fifty grams of marijuana in 2002; possession

of under fifty grams of marijuana in 2012; possession of marijuana with intent to distribute in 2017 and is currently on probation for this offense; and money laundering in 2018 and is currently on probation for this offense.

The affiant further stated he had observed defendant engaging in behaviors consistent with narcotics distribution. The affiant noted in September 2020, he observed defendant exit his residence to meet with an individual, Ernest Monroe (Monroe). Defendant was observed handing a small unknown item to him, and in return was handed something back. At the time of the meeting with defendant, Monroe had documented criminal convictions for: assault in 1991; forgery in 1995; possession of a weapon in 1998; carjacking, obstruction of the administration of law, and hindering apprehension in 2001; manufacturing of CDS in 2002; and possession of CDS near school property in 2011.

Thereafter, the affiant disclosed in October and November 2020 that physical and electronic surveillance of the defendant's residence continued where he again observed defendant engaging in actions consistent with street level narcotics distribution. Throughout the day, he observed defendant exiting his residence and sitting in his vehicle in the driveway for long periods of time where several unidentified individuals approached his vehicle to meet with him. He also observed other individuals remain standing near the vehicle. The affiant

4

A-1501-25

averred that defendant's actions were consistent with the efforts of a drug dealer attempting to hide CDS in various locations on their property to insulate themselves from law enforcement detection or arrest.

The affidavit continued that on a separate occasion that month, an individual, Jylear Brantley (Brantley), arrived in the area of defendant's home driving a silver Acura. A short time later, defendant left his residence, opened the front passenger door of his vehicle to retrieve something between the area of the center console and the glove compartment, and approached the Acura and handed something to Brantley, the driver, through the front passenger door. After the transaction, the Acura left the area. A subsequent investigation revealed Brantley had been adjudicated delinquent for manufacturing and possession of CDS near school property in 2000. Brantley also had documented convictions for: possession of CDS near school property in January 2005; obstructing the administration of law in May 2005; obstructing the administration of law and aggravated assault in 2008; marijuana possession in 2009; manufacturing CDS in 2012; witness tampering in 2013; and possession of CDS near school property in 2014.

During the third week of November 2020, the affiant observed a gray Lexus arrive in the area of defendant's home. Approximately twenty-five

minutes later, defendant arrived in a black Nissan Pathfinder. Two males emerged from the Lexus and approached defendant. After a short conversation, defendant went inside his residence while the two men entered defendant's Mercedes and sat in the backseat. Shortly thereafter, defendant came out with a small black shopping bag in his right hand, opened the driver's side door and sat in the driver's seat. Defendant placed the bag near the center console of the vehicle, and then handed something to the two backseat passengers. At the time, one individual, Almein Archer (Archer), seated in the rear of the vehicle, had documented criminal convictions for: possession of a firearm for an unlawful purpose in April 1998; shoplifting in October 1998; possession of CDS near school property in December 1998; possession of CDS near school property with intent to distribute in 2000; possession, manufacturing, and conspiracy of CDS in 2005; possession of under fifty grams of marijuana in 2016; and shoplifting in 2019.

On November 25, 2020, the head Detective of the Task Force applied for no-knock search warrants for defendant's home, his Mercedes, his person, and any individuals at or departing from the New Brunswick address provided in the application. In support of the application, the affiant included the following summating statement in the affidavit to support the suspicion that knocking first

A-1501-25

would (a) pose a risk to officer safety and (b) that individuals allegedly associated with defendant could destroy CDS prior to officers' entry into the residence:

> I am requesting authorization to enter the premises without first knocking and announcing the presence of police and our purpose. Entry into the premises without first knocking is requested due to an elevated risk to officer safety as well as a heightened concern for the destruction of evidence. As stated above, W[illiams] has a prior conviction for possession of a firearm. Further, the other individuals identified as associating with him, B[rantley], A[rcher] and M[onroe], have prior convictions for violent offenses or for possessing firearms. B[rantley] is a known gang member. Additionally, as stated above, there are numerous individuals who come and go from the target residence and who remain outside to engage in the distribution of CDS. Once officers approach the residence to execute the warrant, these[] individuals can immediately alert others who are located inside to destroy any CDS prior to the officers making entry. Therefore, we deem the execution of a Search Warrant at 5 Delavan Court, New Brunswick, a high-risk operation that poses an elevated risk to officer safety and potential destruction of evidence.
>
> [(Emphasis added).]

On the same date, the Presiding Judge of the Criminal Division reviewed and issued the search warrants. The Task Force executed the warrants on December 3, 2020 and found a handgun in a bedroom and approximately six ounces of marijuana in the Mercedes.

7

On October 19, 2021, a Middlesex County Grand Jury returned Indictment No. 21-10-0974, charging defendant with second-degree possession of a firearm while possessing CDS with intent to distribute, N.J.S.A. 2C:39-4.1; third-degree possession of CDS with intent to distribute, N.J.S.A. 2C:35-5(a)(1) and N.J.S.A. 2C:35-5(b)(11)(a); third-degree possession of CDS with intent to distribute within 1,000 feet of school property, N.J.S.A. 2C:35-7(a); and second-degree possession of CDS with intent to distribute within 500 feet of public property, N.J.S.A. 2C:35-7.1. A Middlesex County Grand Jury also returned Indictment No. 21-10-0975, charging defendant with second-degree certain persons not to possess a weapon, N.J.S.A. 2C:39-7(b)(1).

Defendant's initial motion to suppress was heard on May 28, 2024, and after the court heard argument, it granted the motion to suppress the evidence seized from defendant's home and car. In its oral decision, the court acknowledged that search warrants are presumed valid, that substantial deference must be given to the issuing judge, and that marginal or doubtful cases should favor sustaining the warrant. However, the court found the affidavit filed in support of the search warrants lacked probable cause. The court determined:

> [T]hese warrants should never have been issued. There's no [probable cause] in this affidavit to support it. It's a general warrant. It doesn't particularize anything. The only thing it particularizes is that Mr.

Williams is a bad guy because he has prior convictions for drug distribution in his past. In one instance. He's a bad guy because he has a gun possession in his past, and he's a bad guy because he's been convicted of possessing under [fifty] grams of marijuana on a number of different occasion[s].

The court also found the State improperly relied on the criminal records of defendant and the other individuals, reasoning that "the reputation of the parties involved" was not relevant to probable cause. The court also determined there were critical omissions in the affidavit, including the lack of controlled purchases. Specifically, the court found:

Without these controlled buys to confirm and support the officer's opinions . . . and because of what the case that I just cited as the framework for particularized suspicion as to what crime we're dealing with and what is the need for the search of a particular home or a car or person, I'm going to have to grant the . . . defense's motion to suppress this because this was just a generalized approach to establishing probable cause for a generalized warrant, at best, and not anything that is consistent with what the law requires with regards to a particularized suspicion.

The court also noted the affidavit failed to identify the items exchanged as CDS or show that money transactions were made between the defendant and other individuals. The court thereupon suppressed the firearm and CDS.

The State filed its first motion for leave to appeal, which we granted and after briefing and oral argument, reversed the trial court's order holding that

9

defendant's motion to suppress fell short in overcoming the substantial deference we are required to provide to the warrant issuing judge's finding of probable cause. Williams, slip op. at 13. Our Supreme Court denied defendant's motion for leave to appeal.

On remand, defendant filed a second motion to suppress the evidence recovered from his home based upon his contentions that the warrant lacked reasonable particularized suspicion to justify the no-knock entry provision of the search warrant. The court issued a November 18, 2025 order granting the motion to suppress for the reasons placed on the record on May 28, 2024, stating "that the no-knock aspect of [that] decision made on [that] date concerning [the] motion to suppress remains in force" and the court's "decision on the no-knock . . . can [be] deal[t] with . . . on the Appellate Division level."

With respect to the court's decision on the no-knock aspect of its May 28, 2024 oral decision, it made a finding that "one firearm case . . . seems to have been the basis for the no-knock of [defendant's] residence, a conviction for an unlawful possession from 1998, which was 26 years ago." The court further found that in the time that followed the firearm case, "nothing else related to anything involving []Williams being a danger such that a no-knock of his home needed to be authorized." The court also found that it had to give high protection

A-1501-25

to intrusion of defendant's residence and provided that to permit such an intrusion there must be a "good basis to do that." The court stated that the "no-knock . . . was issued based on a 1996 conviction [alone] and that's the only thing referencing that []Williams may be a dangerous guy" and found "there's an issue with regards to a no-knock being granted at that point."

The court also acknowledged Williams', Archer's and Brantley's criminal history and characterized the affidavit as citing the individuals' "long criminal history" after identified drug transactions to "support that these are bad dudes engaging in drug-related activity because they've done so in the past . . . [d]espite the fact that much of the past that is spoke about is 10 to 20 years ago." In so doing, the court noted the affidavit provided that Williams was convicted for a drug related event in 2017, Brantley was identified as a member of the violent "Bounty Hunter" set of a street gang with convictions as recent as 2014, and Archer has a long prior history and a conviction related to CDS in 2016. The court determined that the affiant made "too many assumptions . . . with no basis to make it other than []Williams is a bad dude and has marijuana charges in his past."

The court concluded that the affidavit was devoid of particularized reasons as to why Williams would be dangerous because of an unlawful

A-1501-25

possession of a weapon charge dating back to 1998.  The judge reasoned that based upon his understanding of the case law if there "is any kind of inkling that this [defendant] is kind of a danger now such that you would have to do a no-knock, grant a no-knock, but I can't believe and I don't believe that the case law is such that . . . unlawful possession of a weapon, which is a regulatory offense, and no license to possess a gun back in 1998, . . . [is] enough to conclude that there has to be a no-knock provided for a search of [defendant's] home."  The court found that the no-knock provision of the search warrant was not supported by a set of particularized reasons and thereupon granted defendant's motion to suppress.

## II.

"Appellate courts reviewing a grant or denial of a motion to suppress must uphold the factual findings underlying the trial court's decision so long as those findings are supported by sufficient credible evidence in the record."  State v. Lamb, 218 N.J. 300, 313 (2014) (citing State v. Elders, 192 N.J. 224, 243 (2007)).  "Thus, appellate courts should reverse only when the trial court's determination is 'so clearly mistaken "that the interests of justice demand intervention and correction."'"  Ibid. (quoting Elders, 192 N.J. at 244).

12

"A trial court's interpretation of the law, however, and the consequences that flow from established facts are not entitled to any special deference." Ibid. (citing State v. K.W., 214 N.J. 499, 507 (2013)). "Therefore, a trial court's legal conclusions are reviewed de novo." Ibid. (citing State v. Gandhi, 201 N.J. 161, 176 (2010)).

In our review of a matter that challenges the bona fides of a search warrant, we accord substantial deference to a court's decision to issue a search warrant. State v. Keyes, 184 N.J. 541, 878 A.2d 772 (2005). "[O]nce the State establishes that the search warrant was issued in accordance with the procedures prescribed by the rules governing search warrants," "[a] search based upon a warrant is presumed valid," and defendant bears the burden to prove "there was no probable cause supporting the issuance of the warrant or that the search was otherwise unreasonable." State v. Valencia, 93 N.J. 126, 133 (1983).

With these guiding principles in mind, we consider whether a search warrant is rendered a nullity because it included a no-knock provision which the court concluded was not supported by a set of particularized reasons that defendant or the factual circumstances presented posed a danger to the officers' lives and safety.

13

"There are two types of warrants police can request:  a no-knock warrant and a knock-and-announce warrant."  State v. Caronna, 469 N.J. Super. 462, 486 (App. Div. 2021).

> [T]o justify a no-knock warrant, a police officer, under the totality of the circumstances and based on his or her experience and knowledge, "must have a reasonable, particularized suspicion that a no-knock entry is required to prevent the destruction of evidence, to protect the officer's safety, or to effectuate the arrest or seizure of evidence."
>
> [Id. at 486 n.17 (quoting State v. Johnson, 168 N.J. 608, 619 (2001)).]

A no-knock warrant is an exception to well-established Fourth Amendment principles, that the police must knock-and-announce their presence before executing a warrant.  Johnson, 168 N.J. at 615-16.  "The knock-and-announce rule protects 'human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident.'"  Caronna, 469 N.J. Super. at 499 (quoting Hudson v. Michigan, 547 U.S. 586, 594 (2006)).  "Suffice it to say that the rule safeguards against violence to occupants of the residence, and importantly, likewise protects police officers themselves."  Ibid.

The knock-and-announce requirement, however, is "not absolute."  State v. Jones, 179 N.J. 377, 397 (2004); see also State v. Sanchez, 179 N.J. 409, 412 (2004).  In general, reasons to ignore the requirement when executing a warrant

are inclusive of the justifications to grant a no-knock warrant, and also include exigent circumstances. Caronna, 469 N.J. Super. at 474 n.4 (citing State v. Robinson, 200 N.J. 1, 14 (2009)) (affirming suppression of the evidence obtained when police ignored a knock-and-announce requirement in a valid search warrant because there were no exigent circumstances or other justifications for a no-knock entry).

In Johnson, 168 N.J. at 619, the Court summarized the following requirements for justification of a "no-knock" warrant in all cases, including those involving drugs:

> First, to justify a no-knock warrant provision, a police officer must have a reasonable, particularized suspicion that a no-knock entry is required to prevent the destruction of evidence, to protect the officer's safety, or to effectuate the arrest or seizure of evidence. Second, the officer must articulate the reasons for that suspicion, which may be based on the totality of the circumstances. Third, although the officer's assessment may derive from experience and knowledge, the officer must articulate a minimal level of objective justification to support the no-knock entry, meaning it must be based on more than a mere hunch. In short, there must be a fact specific and fact-sensitive explanation of why an announced entry would measurably hamper the execution of the warrant.
>
> [Id. at 619, 622.]

A-1501-25

In order to justify and secure a "no-knock" warrant, the police must present specific facts that demonstrate a "reasonable particularized suspicion that a 'no-knock' entry is required to prevent the destruction of evidence, to protect the officers' safety, or to effectuate the arrest or seizure of evidence." Jones, 179 N.J. at 397. The required showing is not high. Id. at 399, 408 (citing Richards v. Wisconsin, 520 U.S. 385, 394-95 (1999)).

"Reasonable suspicion" is judged on the "totality of the circumstances" and is a less demanding standard than probable cause. Jones, 179 N.J. at 398; State v. Stovall, 170 N.J. 346, 370 (2002). "The court must determine whether the officer had a reasonable suspicion to believe that an exception to the rule was justified." State v. Walker, 385 N.J. Super. 388, 400 (App. Div. 2006), certif. denied, 187 N.J. 83 (2006). The Court stated that:

> The evaluation of the reasonableness of a no-knock warrant application cannot be made in a theoretical vacuum. The determination is highly fact sensitive and requires a balancing of risks. Among those factors the court must take into account are the practical risks to the officers' lives and safety, which are of especial concern when a warrant is to be executed in a home.
>
> [Jones, 179 N.J. at 406.]

In Jones, the Court addressed the issue of "officer safety" as it affected the validity of a no-knock warrant. 179 N.J. at 397. The Court explained,

16

"boilerplate police concerns are insufficient." Id. at 398 (internal quotations omitted). Instead, to justify no-knock entry, there must be case-specific "objective facts" that amount to "a reasonable suspicion of a heightened risk to officer safety . . . ." Ibid. The Court stated, "[s]everal factors, alone or in combination, may provide sufficient justification to dispense with the knock-and-announce requirement[,]" regardless of a suspect's inclination for violence or criminal history, including: an informant's tip about the presence of weapons, an officer's knowledge of a suspect's violent criminal history coupled with information from an informant that the suspect still exhibits violent behavior, or the layout of an apartment where one of the occupants has had a violent criminal past. Id. at 400-01.

In addition, where a suspect had multiple drug convictions and faces a possible extended term, there exists a greater potential for resisting arrest because of the "strong incentive to resist capture by the police." Id. at 408. Further, if the no-knock application is based upon the potential for the destruction of evidence, "the police must articulate some reason specific to the crime, to the person under investigation, or to some other permissible factor, that leads them reasonably to believe that destruction of evidence is more than

17

a hypothetical possibility." State v. Carlino, 373 N.J. Super. 377, 387 (App. Div. 2004).

III.

Before us, the State maintains that the affidavit articulated specific facts relevant to the affiant's concerns about officer safety and the destruction of evidence. The State also emphasizes the court incorrectly treated defendant's prior conviction of unlawful possession of a firearm as the sole fact relied upon by the affiant to justify the no-knock provision.

In response, defendant contends we should affirm the suppression of evidence seized from his home because the affidavit's statement that knocking and announcing would jeopardize officer safety and risk evidence destruction were inadequately supported by reasonable suspicion. Indeed, according to defendant, the reasons stated in the warrant affidavit for why a no-knock entry of defendant's home was necessary were based on: (1) his single twenty-two-year-old conviction for unlawful possession of a weapon; (2) the criminal records of Monroe, Brantley, and Archer; and (3) the presence of numerous individuals "who come and go" while engaging in CDS transactions outside the house. Defendant asserts that these facts, individually or cumulatively, do not amount to a reasonable, particularized suspicion that no-knock entry was

18

required and cites Jones, 179 N.J. at 400, and Sanchez, 179 N.J. at 411-12, to support his contention.

As noted, the court determined that the no-knock provision was based primarily, if not substantially, on defendant's conviction for an unlawful possession from 1998. We disagree both with the court's characterization of the bases for the no-knock warrant as stated in the affidavit and defendant's assertion that the totality of the circumstances does not amount to a reasonable suspicion to justify a no-knock provision.

Here, the affidavit provides both: (1) a variety of instances of defendant engaging in the distribution of CDS as it relates to the potential destruction of evidence; and (2) a particularized set of reasons as to officers' potential safety being endangered citing "W[illiams'] . . . prior conviction for possession of a firearm" and "other individuals identified as associating with him, [namely], B[rantley], A[rcher] and M[onroe], hav[ing] prior convictions for violent offenses or for possessing firearms."

We are convinced the required justification related to officer safety is satisfied based upon the information provided by the affiant by way of Williams' prior convictions, the individuals he associated with throughout the course of the investigation, and drug distribution in his driveway and home, and not solely,

as the court concluded, on defendant's single conviction for unlawful possession from 1998. Justification for the no-knock provision is also met with respect to the potential destruction of CDS evidence because the affidavit references the "numerous individuals" coming and going from defendant's residence along with individuals "who remain outside to engage in the distribution of CDS" who, based on the affiant's experience, may alert individuals inside the home to destroy CDS.

Finally, we reject defendant's reliance on our Supreme Court's decisions, in <u>Sanchez</u> and <u>Jones</u>, where the Court upheld no-knock provisions in drug-related warrants based on concerns related to potential evidence destruction and officer safety. In <u>Jones</u>, our Court ruled a no-knock provision was, indeed, supported by reasonable suspicion, despite it being based solely on the nature of "drug-related cases" and the defendant's almost decade-old prior arrest for aggravated assault of an officer and unlawful possession of a weapon. 179 N.J. at 403. Notably, the affidavit did not include the final disposition of that arrest, for which he ultimately "pled down to unlawful possession of a weapon, a crime of the fourth-degree." <u>Id.</u> at 404. In <u>Sanchez</u>, the affidavit relied entirely on the defendant's "nine-year-old arrest for aggravated assault and unlawful possession

of a weapon," as well as his decades-old arrests for CDS possession and shoplifting. 179 N.J. at 412.

We are convinced the bases for the no-knock provision before us are significantly more detailed and precise. Not only does the affidavit rely on defendant's arrests for crimes of which he was actually convicted but also emphasizes the criminal histories and convictions of the individuals personally observed by the affiant leaving the premises. Although we acknowledge the non-violent nature of the majority of defendant's convictions, the quantum of his convictions is, as outlined in the justification, significant, as well as the violent nature of the other individuals' convictions, which include assault and aggravated assault.

Further, unlike Sanchez and Jones, the affidavit's basis explains the specific ways in which the alleged criminal conduct's connection to drugs demands a no-knock provision, notably the affiant's extensive experience in these types of investigations where "individuals can immediately alert others who are located inside to destroy any [CDS]." Given the affidavit's particularized and specific justifications, we are satisfied the court's decision to suppress was not supported by sufficient credible evidence in the record.

To the extent we have not specifically addressed any of defendant's arguments in any of the subheadings, it is because we conclude they are without sufficient merit to warrant discussion in a written opinion.  <u>R.</u> 2:11-3(e)(2).

Reversed.  We do not retain jurisdiction.

I hereby certify that the foregoing is
a true copy of the original on file in
my office.

M.C. Harley

Clerk of the Appellate Division

A-1501-25